**In re Eric MWANGI and Pauline Mwicharo, Debtors.**

**Eric Mwangi; Pauline Mwicharo, Appellants,**

v.

**Wells Fargo Bank, N.A., Appellee.**

**BAP No. NV–09–1408–DHPa.**

**Bankruptcy No. 09–24057–BAM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 16, 2010.

Decided June 30, 2010.

Christopher Patrick Burke, Las Vegas, NV, for debtors.

Before: DUNN, HOLLOWELL and PAPPAS, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

As part of its standard, national procedures, each night Wells Fargo Bank, N.A. ("Wells Fargo") runs a computerized comparison of all newly filed Chapter 7 [1] bankruptcy cases against its list of account holders. Upon discovering that Appellants

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Rule" or "FRBP" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

had filed a chapter 7 petition, Wells Fargo "froze" Appellants' accounts and sent a letter to the chapter 7 trustee, seeking instructions as to disbursement of the funds. No directions were forthcoming from the trustee. The debtors, claiming 75% of the funds in the accounts exempt, demanded that Wells Fargo release funds to them. When Wells Fargo refused, Appellants sought sanctions for willful violation of the automatic stay. The bankruptcy court held that the exempt funds in the accounts were not property of the bankruptcy estate. As a consequence, it determined that Wells Fargo's failure to release the funds did not constitute a violation of the automatic stay where the record did not establish that Wells Fargo was attempting to "collect, assess or recover" a prepetition claim it had against Appellants.

We REVERSE and REMAND for further proceedings.

## I. FACTS

Appellants Eric Mwangi and Pauline Mwicharo filed a voluntary chapter 7 petition on August 3, 2009 ("Petition Date"). On the Petition Date, Appellants held four accounts at Wells Fargo with an aggregate balance of $17,075.06. Nevertheless, in their schedule of personal property ("Schedule B") filed on the Petition Date, the Appellants listed only two accounts at Wells Fargo: a checking account with a stated value of $500.00 and a savings account with a stated value of $800.00. The Appellants did not claim the amounts on deposit in either of these accounts as exempt in their schedule of claimed exemptions ("Schedule C").

The Appellants included Wells Fargo as a creditor in the case for two debts. Wells Fargo was scheduled as an unsecured creditor owed $50,000 for credit card debt incurred during the period 2006–2009. Wells Fargo also was listed as an unsecured creditor owed $2,000 based .on an equity line of credit incurred in 2004.

When it learned of Appellants' chapter 7 bankruptcy filing, Wells Fargo placed a "temporary administrative pledge" on their accounts.[2] Wells Fargo states that in doing so, it was following an internal standard procedure implemented when notified that one of its depositors has filed a bankruptcy petition. After freezing Appellants' accounts, Wells Fargo sent a letter dated August 6, 2009, to the chapter 7 trustee requesting instructions as to whom Wells Fargo should distribute the account funds. In the letter to the trustee, Wells Fargo states that on the Petition Date:

> $17,075.06 became property of the bankruptcy estate, known as the "Estate Funds." The Estate Funds are now in bankruptcy status, which means the funds are payable only to you or upon your order.... The Estate Funds will remain in bankruptcy status until we receive direction from you regarding their disposition or on October 12, 2009, which is 31 days after the scheduled First Meeting of Creditors.

Also on August 6, 2009, Wells Fargo sent letters to Appellants' counsel, which stated that the aggregate funds in the total amount of $17,075.06 became property of the bankruptcy estate on the Petition Date. In its letters to Appellants' counsel, Wells Fargo states that the account funds "are no longer available to your client(s)." The letters state further that Wells Fargo is required by Bankruptcy Code sections 541 and 542 to preserve the Estate Funds and to follow the trustee's direction with

---

**2.** Wells Fargo expressly disclaimed that the "freeze" was implemented to protect any right to set off it might have had as authorized by *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

regard to the Estate Funds. The letters disclose that Wells Fargo had requested instruction from the trustee with respect to the Estate Funds, but advised that the trustee had "30 days from the First Meeting to object to a claim of exemption for the Estate Funds." Finally, the letters described what, in Wells Fargo's view, Appellants' rights were with respect to the Estate Funds:

> Ownership of claimed exempt property remains with the bankruptcy estate until [the time for objecting to claimed exemptions] elapses or the trustee directs otherwise. Wells Fargo is prepared to immediately follow the trustee's direction regarding the Estate Funds, and you may be able to expedite the trustee's decision.

On August 11, 2009, Appellants filed an amended Schedule B in which they now included four accounts at Wells Fargo:

> checking account # 7070 listed with a value of $10,247.46; savings account # 9955 listed with a value of $839.42; checking account # 8658 listed with a value of $5,437.95, and savings account # 0424 listed with a value of $550.23.

More importantly for purposes of this appeal, Appellants also filed on August 11, 2009, an amended Schedule C through which they claimed an exemption in 75% of the value of each of the Wells Fargo accounts, relying on Nev. Rev.Stat. § 21.090(1)(g).[3] Neither the trustee nor any other party, including Wells Fargo, ever objected to the exemptions claimed by Appellants in the accounts.

On August 18, 2009, Appellants' counsel contacted Wells Fargo to request that the freeze be lifted on the basis that the Appellants claimed an exemption in a portion of the funds. Wells Fargo refused to lift the freeze without the trustee's agreement. On August 25, 2009, Appellants' counsel faxed a letter to Wells Fargo asserting that Appellants claimed an exemption in 75% of the account funds. The letter asserted the Appellants' position that failure to release the account funds to the Appellants was a violation of the automatic stay, and informed Wells Fargo of Appellants' intent to file a motion seeking attorney's fees, sanctions, and punitive damages for the violation.

---

**3.** Nev.Rev.Stat. § 21.090(1)(g) provides:

The following property is exempt from execution, except as otherwise specifically provided in this section or required by federal law:

. . .

(g) For any workweek, 75 percent of the disposable earnings of a judgment debtor during that week, or 50 times the minimum hourly wage prescribed by section 6(a)(1) of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 206(a)(1), and in effect at the time the earnings are payable, whichever is greater. Except as otherwise provided in paragraphs (o), (s) and (t), the exemption provided in this paragraph does not apply in the case of any order of a court of competent jurisdiction for the support of any person, any order of a court of bankruptcy or of any debt due for any state or federal tax. As used in this paragraph:

(1) "Disposable earnings" means that part of the earnings of a judgment debtor remaining after the deduction from those earnings of any amounts required by law to be withheld.
(2) "Earnings" means compensation paid or payable for personal services performed by a judgment debtor in the regular course of business, including, without limitation, compensation designated as income, wages, tips, a salary, a commission or a bonus. The term includes compensation received by a judgment debtor that is in the possession of the judgment debtor, compensation held in accounts maintained in a bank or any other financial institution or, in the case of a receivable, compensation that is due the judgment debtor.

On August 27, 2009, Appellants filed a motion ("Motion") seeking sanctions pursuant to § 362(k) against Wells Fargo based upon its alleged intentional violation of the automatic stay-specifically, §§ 362(a)(3) and (a)(6).

The bankruptcy court held a hearing on the Motion on September 15, 2009, took the matter under submission at that time, and issued its Memorandum decision on December 10, 2009, denying the Motion.

The bankruptcy court's ruling was premised on its holding that exempt property never becomes property of the bankruptcy estate but remains at all times a debtor's property. Accordingly, the bankruptcy court determined that no provision of § 362(a) covering property of the estate protected the account funds claimed exempt. Finally, the bankruptcy court determined that because Wells Fargo took no action to "collect, assess or recover" a prepetition claim it had against Appellants, it did not violate the automatic stay.

Appellants timely filed their notice of appeal on December 18, 2009.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Whether the bankruptcy court erred when it concluded that exempt property never becomes property of the bankruptcy estate but remains at all times a debtor's property.

2. Whether the Appellants had standing to file and prosecute the Motion.

## IV. STANDARDS OF REVIEW

▮ Whether property is property of the estate is a question of law reviewed de novo. *White v. Brown (In re White)*, 389 B.R. 693, 698 (9th Cir. BAP 2008). Similarly, "[w]e review de novo whether the automatic stay provision of § 362(a) has been violated." *Cal. Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1150 (9th Cir.1996) (citation omitted); *Benz v. Dtric Ins. Co. (In re Benz)*, 368 B.R. 861, 864–65 (9th Cir. BAP 2007). De novo means review is independent, with no deference given to the trial court's conclusion. *See First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir.2006).

## V. DISCUSSION

Resolution of this appeal requires that we examine the interplay among four separate provisions of the Bankruptcy Code: § 541, which defines property of the bankruptcy estate; § 542, which requires turnover of property of the estate; § 522, which authorizes debtors to exempt property from the bankruptcy estate; and § 362(k), which provides that individuals injured by a willful violation of the automatic stay may recover damages.

▮ When a chapter 7 bankruptcy petition is filed, an estate automatically is created that comprises essentially all property owned by the debtor. § 541(a); *FitzSimmons v. Walsh (In re FitzSimmons)*, 725 F.2d 1208, 1210 (9th Cir.1984); *Towers v. Wu (In re Wu)*, 173 B.R. 411, 413 (9th Cir. BAP 1994). "Deposits in the debtor's bank account become property of the estate under section 541(a)(1)." 5 COLLIER ON BANKRUPTCY ¶ 541.09, at p. 541–51 (Alan N. Resnick & Henry J. Sommer, eds., 15th rev. ed.2010). More specifically, funds belonging to a debtor held by a bank in a deposit account "consist[ ] of nothing more or less than a promise to pay, from the bank to the depositor ...," which the bank must " 'pay' to the trustee (or on his order) ... *except to the extent that such debt may*

*be offset under section 553 of this title against a claim against the debtor." Citizens Bank of Maryland v. Strumpf,* 516 U.S. at 20, 21, 116 S.Ct. 286 (emphasis in the original); § 542(b).

### A. *Strumpf and Wells Fargo's Administrative Hold*

Despite the suggestions from Wells Fargo to the contrary, and the determinations of some other courts that have considered Wells Fargo's national policy, the Supreme Court's decision in *Strumpf,* although instructive, does not authorize the type of administrative freeze on bank accounts imposed by Wells Fargo in the dispute before us.

In *Strumpf,* the Supreme Court was presented with a very narrow issue, which it was careful to state explicitly:

> We must decide whether the creditor of a debtor in bankruptcy may, in order to protect its setoff rights, temporarily withhold payment of a debt that it owes to the debtor in bankruptcy without violating the automatic stay imposed by 11 U.S.C. § 362(a).

*Strumpf,* 516 U.S. at 17, 116 S.Ct. 286.

Notwithstanding the limited holding in *Strumpf,* one bankruptcy court has stated broadly:

> The Supreme Court has held that an administrative freeze on an account, which is a promise to pay, does not violate § 362(a)(3) because the freeze constitutes neither a taking of property from the debtor nor an exercise of dominion over the debtor's property.

*Calvin v. Wells Fargo Bank, N.A. (In re Calvin),* 329 B.R. 589, 603 (Bankr.S.D.Tex. 2005). A district court similarly found *Strumpf* controlling in the context before us:

The Court believes that the reasoning of *Strumpf* is applicable. The bank accounts at issue here constituted a promise to pay, from Bank to Debtor. The administrative freeze amounted to a refusal to perform that promise to the Debtor—not an exercise of control over Debtor's property.

*Wells Fargo Bank, N.A. v. Jimenez,* 406 B.R. 935, 946–47 (D.N.M.2008) ("*Jimenez II*").

We believe the *Calvin* and *Jimenez II* courts overlook the context and limited application intended by the Supreme Court in its decision in *Strumpf.* First, the Supreme Court emphasized that the bank's *temporary* refusal to pay did not constitute exercising control over the funds at issue. *Strumpf,* 516 U.S. at 21, 116 S.Ct. 286. In fact, the Supreme Court observed it would be an "odd construction of § 362(a)(7) that required a creditor with a right of setoff to do *immediately* that which § 542(b) specifically excuses it from doing as a general matter: pay a claim to which a defense of setoff applies." *Id.* at 20, 116 S.Ct. 286. In *Strumpf,* the Supreme Court emphasized and reiterated that "[a]ll that concerns us here is whether the refusal [to turnover funds on deposit] *was a setoff*" in violation of § 362(a)(7).[4] *Id.* at 19, 116 S.Ct. 286. Ultimately, the *Strumpf* court found the administrative hold did not constitute a setoff in violation of § 362(a)(7) both in light of § 553 and because the bank had moved for relief from stay to effectuate a setoff. *Id.*

■ Significantly, the Supreme Court did not state, as implied by Wells Fargo, that an administrative freeze *could not* violate § 362(a)(3) or § 362(a)(6). What it did say was

---

**4.** Section 362(a)(7) stays "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor...."

[W]e will not give § 362(a)(3) or § 362(a)(6) an interpretation that would proscribe what § 542(b)'s 'except[ion]' and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt.

*Id.* at 21, 116 S.Ct. 286. In short, *Strumpf* authorizes a bank to impose a temporary administrative hold to preserve setoff rights.

Wells Fargo asserts that even prior to *Strumpf,* we recognized that an administrative pledge did not violate the automatic stay, citing *Bank of Am. Nat'l Trust and Sav. Ass'n v. Edgins (In re Edgins),* 36 B.R. 480, 483 (9th Cir. BAP 1984). However, in *Edgins,* we determined only that the administrative hold at issue, like the one in *Strumpf,* did not violate the automatic stay because the bank was protecting its right to setoff under § 553. "In this type of situation, banks are not so much making a determination of ownership as *giving notice to the debtor that they claim an interest in the funds* and intend to prevent dissipation of *the bank's claimed interest* pending the court's determination of ownership." Id. at 484 (emphasis added). Accordingly, *Edgins* does not apply here.

▪ Significantly, Wells Fargo concedes that the account funds are property of the estate. Wells Fargo also concedes that it has asserted no right of setoff against the Appellants in this case. In fact, Wells Fargo represents that its national policy is not motivated by any right to protect setoff rights generally, as demonstrated by the fact that the existing case law reflects that Wells Fargo places administrative freezes on debtors' accounts even in cases where it is not a creditor of the debtor. *See Jimenez v. Wells Fargo Bank, N.A. (In re Jimenez),* 335 B.R. 450, 451 (Bankr.

D.N.M.2005) ("*Jimenez I* "), *rev'd by, Jimenez II; Calvin,* 329 B.R. at 593. Because Wells Fargo is not attempting to protect setoff rights, the "exception" to turnover of funds in a deposit account recognized by *Strumpf* does not apply in this case.

### B. *Property of the Estate and Exemption Rights*

▪ Section 522(b) allows an individual debtor to exempt specific property from liquidation as part of the estate. As recently noted by the Supreme Court, "most assets become property of the estate upon commencement of a bankruptcy case, *see* 11 U.S.C. § 541, and exemptions represent the debtor's attempt to reclaim those assets or, more often, certain interests in those assets, to the creditors' detriment." *Schwab v. Reilly,* 560 U.S. ——, ——, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010).

In order to make exemption claims under § 522(b), § 522(*l* ) requires that the debtor "file a list of property that the debtor claims as exempt...." Implementing this provision, Rule 4003 required the Appellants to "list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007." Rule 1007(b)(1)(A) required the Appellants to file their schedules of assets and liabilities "prepared as prescribed by the appropriate Official Forms...." Appellants filed their amended Official Form 6C (Schedule C—Property Claimed as Exempt) on August 11, 2009, claiming an exemption under Nevada law for 75% of the funds in the accounts.

▪ Once a claim of exemption has been asserted, "[u]nless a party in interest objects, the property claimed as exempt on [Official Form 6C] is exempt." § 522(*l* ); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Objections are timely if filed with-

in 30 days after the § 341(a) meeting of creditors is concluded, or within 30 days after the schedule of property claimed exempt is amended by the debtor, whichever is later.[5] *See* Bankruptcy Rule 4003(b). If the 30–day objection period mandated by Bankruptcy Rule 4003(b) runs without objection, "[p]roperty claimed as exempt leaves the estate and revests in the debtor...." *Kretzer v. DFW Fed. Credit Union (In re Kretzer)*, 48 B.R. 585, 588 (Bankr.D.Nev.1985).

When the revesting occurs is the operative question for purposes of this appeal. We noted in *Hyman v. Plotkin (In re Hyman)*, 123 B.R. 342, 347 (9th Cir. BAP 1991):

> [T]he 30–day period fixes the right to an exemption and the statute as a whole requires that the property somehow revest. The *timing* of the reversion, however, is not apparent by the interplay of these two rules; it is not necessarily prior to abandonment by the trustee or immediately following the 30–day period.

(Emphasis in original). As we see it, because exemption rights are determined as of the petition date, *see Klein v. Chappell (In re Chappell)*, 373 B.R. 73, 77 (9th Cir. BAP 2007), until the property claimed exempt revests, the debtor holds an inchoate interest in the property. An inchoate interest is one "that has not fully developed, matured, or vested." *Black's Law Dictionary* 830 (9th ed.2009).

Significantly for purposes of this appeal, the Supreme Court recently affirmed the principle that property does not lose its status as estate property simply because a claim to exemption ripens:

> If an interested party does not object to the claimed interest by the time the

Rule 4003 period expires, title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption.

*Schwab v. Reilly*, 560 U.S. ——, ——, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010).

The bankruptcy court held:

> Reading § 522 and § 541 as parts of the same code, it appears that all of the debtor's property goes into the estate upon filing, except for property that is excluded from § 541. Sections 541(b) and (c)(2) then enumerate some of these specific exclusions. By declaring that § 522 operates "notwithstanding section 541," § 522 adds exempt property to that list of exclusions, preventing § 541(a) from sucking all exempt property into the estate. So property exempted under § 522 is treated the same as property listed in § 541(b) and (c)(2); it is not property of the estate, and it remains the debtor's.

Memorandum at 9:1–7. The bankruptcy court's reasoning is inconsistent with the above-cited authorities.

#### C. *Standing*

Wells Fargo does not dispute that under its national policy it routinely holds, and in this case held, property of the estate which is subject to the turnover provisions of § 542(b). It is undisputed that Wells Fargo did not turn over the account funds to the trustee. However, Wells Fargo asserts that § 542(b) only "obligated [it] to pay [the account funds] ... to the trustee or his order." In light of the absence of the *Strumpf* setoff issue, we might expect Wells Fargo to address what other "exception" might apply to the requirement that Wells Fargo immediately turn over the

---

**5.** Although the Appellants amended their Schedule C in this case, that amendment did not extend the deadline for objections where it was filed before the date the § 341(a) meeting of creditors was concluded.

account funds. But here, Wells Fargo appears to assert that no "exception" is required. It contends that its "administrative pledge" in this case, when coupled with its letter to the trustee seeking instructions, complies with the turnover provisions of § 542(b), because it stood willing and able to pay the funds to the trustee "on his order." The trustee did not request turnover of the account funds. End of story, says Wells Fargo. What happened to the funds was up to the trustee, and therefore out of Wells Fargo's control.

Wells Fargo contends that because the account funds were property of the estate, Appellants have no right to compel turnover of the funds to them because § 542(b) lacks any reference to debtors or their exemption rights. Wells Fargo asserts therefore that Appellants lacked the right to demand that Wells Fargo release any of the account funds until the 31st day following the § 341(a) meeting of creditors, at which time 75% of the account funds would no longer be property of the estate.

 Wells Fargo further contends that during the time the accounts funds are property of the estate, any action to assert rights involving these funds belong only to the chapter 7 trustee pursuant to § 323.[6] Thus, only the trustee, not the Appellants, could ever have standing to pursue stay violation sanctions under § 362(a)(3). In

this regard, however, Wells Fargo fails to recognize that turnover issues are not coextensive with issues relating to application of the automatic stay. As we pointed out in the *Abrams* decision, "the failure to return property of the estate with knowledge of the bankruptcy is a violation of *both* the automatic stay and of the turnover requirements of the Bankruptcy Code." *Abrams v. Sw. Leasing & Rental, Inc. (In re Abrams)*, 127 B.R. 239, 242–43 (9th Cir. BAP 1991) (emphasis added), citing *In re Carlsen*, 63 B.R. 706, 711 (Bankr. C.D.Cal.1986). For that reason, we believe it is irrelevant whether Wells Fargo's national policy of holding the account funds until requested by the trustee to release them might have been in technical compliance with § 542(b), an issue which we do not decide.

Section 362(k)(1)[7] provides in relevant part:

[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

 Section 522's right to claim exemptions in property of the estate bestows standing on debtors for purposes of § 362(k)(1).[8] As parties with a claimed

---

6. Section 323 is entitled "Role and capacity of trustee," and provides:

 (a) The trustee in a case under this title is the representative of the estate.
 (b) The trustee in a case under this title has capacity to sue and be sued.

7. The protections provided by § 362(k) previously were found at § 362(h). The section was renumbered under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23.

8. Indeed, in light of § 362(k)(1)'s provision of a remedy for "an individual" injured by any

willful violation of the stay, it appears primarily to have been designed to protect the rights of individual debtors, since, while frequently they are individuals, trustees always represent the estate and may not be entitled to recover damages under § 362(k). *See, e.g., Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192–93 (9th Cir.1995) ("[W]hile a trustee can be an 'individual' if the trustee is a natural person (as opposed to, e.g., a corporate entity), the individual's status as trustee precludes any finding that the trustee suffered any damages as an individual, because any harm suffered in the form of costs and attorney's fees is actually incurred by a thing, *viz.*, the bankruptcy

interest in estate property, the Appellants had standing to pursue sanctions for a stay violation.

D. *Section 362(a)(3) and Ninth Circuit Case Law*

▉ The stay of § 362(a) arises automatically when a bankruptcy case is filed. Once the stay existed, Wells Fargo determined at its own risk whether to observe it.

Section 362(a)(3) expressly prohibits "any act . . . to exercise control over property of the estate." "The 'exercise control' clause of § 362(a)(3) was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353, 1984 U.S.C.C.A.N. (98 Stat.) 371. Congress did not provide an explanation of that amendment." *In re Del Mission Ltd.,* 98 F.3d at 1151. Nevertheless, the Ninth Circuit has developed a limited body of case law addressing the application of § 362(a)(3).

▉ As early as 1991, we interpreted § 362(a)(3) to proscribe the mere knowing retention of estate property. *See In re Abrams,* 127 B.R. at 241–43. The Ninth Circuit also has held that the knowing retention of estate property violates § 362(a)(3). *See In re Del Mission Ltd.,* 98 F.3d at 1151. The Ninth Circuit has clarified that direct control over estate property is a prerequisite to a finding that § 362(a)(3) has been violated. *Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Products, Inc.),* 23 F.3d 241, 244 (9th Cir.1994).

In *Del Mission Ltd.,* the Ninth Circuit held that the creditor violated § 362(a)(3) by refusing to turn property of the estate

over to the chapter 7 trustee. The fundamental issue addressed in *Del Mission Ltd.* was whether the creditor exercised control over property of the estate by retaining possession of intangible estate property, *i.e.,* where the trustee was coerced by the tax creditor to pay prepetition tax claims in order to obtain turnover of other estate property (a liquor license). In *Del Mission Ltd.,* the Ninth Circuit clarified that to effectuate the purpose of the automatic stay, "the onus to return estate property is placed upon the possessor[.]" *In re Del Mission Ltd.,* 98 F.3d at 1151, citing *In re Abrams,* 127 B.R. at 243. The Ninth Circuit rejected the argument made here by Wells Fargo that it had no obligation to relinquish possession of the deposit funds until the chapter 7 trustee specifically requested them. *In re Del Mission Ltd.,* 98 F.3d at 1152.

▉ It has long been the determination of this panel that the turnover provisions of the Bankruptcy Code are to be self-effectuating, subjecting to sanctions a party that willfully fails to comply. *See In re Abrams,* 127 B.R. at 242–43. We held in *Abrams* that a creditor's failure to turn over a repossessed car after receiving notice of a chapter 7 petition constituted a violation of the automatic stay.

▉ Wells Fargo asserts it did not exercise control over property of the estate. We disagree. Wells Fargo could have paid the account funds to the trustee; it did not. Wells Fargo could have released the account funds claimed exempt to the Appellants when demand was made; it did not. Wells Fargo could have sought direction from the bankruptcy court, by way

estate, and not by the trustee as a natural person." (Citations omitted)). This interpretation is reinforced by the terms of § 362(k)(2), which provides: "If such violation is based on an action taken by an entity

in the good faith belief that subsection (h) applies to the *debtor,* the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages." (Emphasis added).

of a motion for relief from stay or otherwise, regarding the account funds; it did not. Instead, it chose to hold the funds until a demand was made for payment that it alone deemed appropriate. If that is not "exercising control over" the funds, we don't know what is.

■ In order to force Wells Fargo to relinquish account funds Wells Fargo "froze" postpetition, the Appellants were not required to seek a determination from the bankruptcy court that they were eligible for the protection of the automatic stay, that the trustee had abandoned the account funds to them, or that their claim of exemption in a portion of the account funds was valid. The Appellants asserted an exemption in the account funds. In contravention of both *Abrams* and *Del Mission Ltd.*, the effect of Wells Fargo's actions in this case was to place the burden on the Appellants to obtain the return of property of the estate in which they claimed an exemption.

In *Del Mission Ltd.*, the Ninth Circuit, discussing the policy issues involved in evaluating the conduct of a creditor who exercises control over property of the estate, stated that "the underlying purpose of the automatic stay [is] to alleviate the financial strains on the debtor." *In re Del Mission Ltd.*, 98 F.3d at 1151.

> [I]f persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced.

*Id.*, quoting *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir.1989).

The impact of Wells Fargo's national policy is to turn on its head the balance between rights of parties legislatively created. As a result of the policy, every party, except Wells Fargo, whose rights are impacted by the administrative freeze will need to take action.

## E. *Issues on Remand*

■ Whether Wells Fargo violated the automatic stay is a threshold question. A further material issue is whether any such violation was "willful" within the meaning of § 362(k).

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded. [*In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989).]

> A violation of the stay is thus willful when a creditor acts intentionally with knowledge of the bankruptcy. [*Knaus*, 889 F.2d at 775].

*In re Abrams*, 127 B.R. at 243.

■ "The 'willfulness test' for automatic stay violations merely requires that: (1) the creditor know of the automatic stay; and (2) the actions that violate the stay be intentional." *Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 220 (9th Cir. BAP 2006), quoting *In re Peralta*, 317 B.R. 381, 389 (9th Cir. BAP 2004). *See also In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir.1992). We have held that the duty to relinquish property of the estate also has a reasonableness element. *In re Abrams*, 127 B.R. at 243 (creditor must relinquish property of the estate within a reasonable time period after notice of the bankruptcy case).

When Wells Fargo took no action after receiving no instructions from the trustee as to how to disburse the account funds, which were indisputably estate property, Wells Fargo "exercised control" over those funds, and it violated the automatic stay. On remand, the bankruptcy court should determine whether Wells Fargo's continuation of the administrative freeze and retention of the account funds claimed exempt, in the absence of instructions from the trustee, was reasonable in light of the Appellants' demand that the subject account funds be released for their use. If the bankruptcy court determines that Wells Fargo's conduct entailed a willful violation of the stay under § 362(a), then the bankruptcy court will need to determine what, if any, damages the Appellants are entitled to under § 362(k)(1). We leave those determinations to the bankruptcy court.

## VI. CONCLUSION

The bankruptcy court erred when it determined that Wells Fargo did not exercise control over property of the estate when it placed its administrative freeze on Appellants' account funds. Appellants have standing to seek sanctions against Wells Fargo pursuant to § 362(k) for willful violation of the stay with respect to their interest in estate property.

We REVERSE and REMAND to the bankruptcy court for further proceedings in light of our conclusions herein.