**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                    )    BAP No.   CC-15-1227-FCTa
                                          )
CINEVISION INTERNATIONAL,                 )    Bk. No.   11-40813-TD
INC.,                                     )
                                          )
                    Debtor.               )
_____            )
                                          )
FRANK MAYOR; CINDY GUNADI,                )
                                          )
                    Appellants,           )
                                          )
v.                                        )    **MEMORANDUM**[*]
                                          )
EDWARD M. WOLKOWITZ,                       )
Chapter 7 Trustee,                        )
                                          )
                    Appellee.             )
_____            )

Argued and Submitted on January 21, 2016
at Pasadena, California

Filed – February 17, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Thomas B. Donovan, Bankruptcy Judge, Presiding

_____

Appearances:    Andrew Edward Smyth argued for Appellants Frank
                Mayor and Cindy Gunadi; Daniel J. Yourist argued
                for Appellee Edward M. Wolkowitz.

_____

---

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

Before: FARIS, CORBIT[**], and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Appellants Frank Mayor and Cindy Gunadi appeal from the bankruptcy court's order sanctioning them $99,745.24 for their violation of the automatic stay and their failure to turn over property belonging to the bankruptcy estate of Debtor Cinevision International, Inc. ("Debtor" or "Cinevision"). They argue that the court erred by disregarding evidence of their good faith and subjective intent. The chapter 7[1] trustee, Appellee Edward M. Wolkowitz, argues that Appellants knowingly tried to conceal the property and circumvent the automatic stay. We hold that the bankruptcy court did not err in sanctioning Appellants. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND[2]

Cinevision was a film production company in the business of acquiring films in DVD format and offering those DVDs for distribution to various companies. Mr. Mayor and Ms. Gunadi (who are husband and wife) are the stockholders and officers of

---

[**] Honorable Frederick P. Corbit, Chief United States Bankruptcy Judge for the Eastern District of Washington, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] Appellants have failed to include all relevant documents in their excerpts of record. We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

Cinevision. Ms. Gunadi also owns the building housing Cinevision's operations.[3]

Cinevision filed a chapter 11 petition on July 19, 2011. The case was later converted to chapter 7, and the Trustee was appointed to administer the estate.

In December 2010, a few months before Cinevision filed its chapter 11 petition, Mr. Mayor formed a new company called Cinevision Global, Inc. ("Cinevision Global"). He owns 100% of its equity.

The Trustee conducted a site inspection of Mr. Mayor's business premises at 410 Bamboo Lane. He found 10,156 DVDs hidden in an unlighted space. The Trustee learned that Mr. Mayor was selling the DVDs through Cinevision Global's online store. He also found various pieces of post-production film equipment and determined that the DVDs and equipment belonged to Cinevision.

The Trustee's counsel informed Appellants that the DVDs and equipment were property of the bankruptcy estate and demanded that Appellants turn those items over to the Trustee. Counsel

---

[3] The bankruptcy court found that Ms. Gunadi owns real property located at 424 Bamboo Lane in Los Angeles, where Cinevision operated its business. The record is unclear whether Ms. Gunadi also owns or controls the real property at 410 Bamboo Lane, which is described as Mr. Mayor's office. At oral argument, counsel for the Trustee stated that Ms. Gunadi owns the real property at 410 and 424 Bamboo Lane, which is a single building. Counsel for Appellants professed that he did not know which, if any, of the properties Ms. Gunadi owns.

Additionally, Ms. Gunadi is an active member of the California state bar. She represented herself and Mr. Mayor in the adversary proceeding which gave rise to this appeal.

3

advised Appellants that they were violating the automatic stay and subject to sanctions. When Appellants did not respond to the Trustee's demand, the Trustee commenced an adversary proceeding for turnover against Appellants.

The Trustee subsequently learned that Appellants were in possession of $10,500 in cash paid by DVD distributor MoMedia International, Ltd., due to an account receivable owed to Cinevision. The Trustee discovered that, after Cinevision filed its bankruptcy petition, Mr. Mayor had instructed MoMedia to wire the payment to his new company, Cinevision Global, and MoMedia eventually complied.

The Trustee moved for summary judgment to recover the post-production film equipment, the 10,156 DVDs, and the $10,500 cash proceeds of the MoMedia account receivable. He argued that Appellants "intentionally secreted" estate property, failed to list the property on Cinevision's schedules, and refused to turn over the property to the Trustee upon demand.

Appellants argued that Cinevision fully disclosed the assets on its Schedules. Appellants contended that the DVDs were worthless; they claimed that the distributor in possession of the DVDs on the petition date would have destroyed them at Cinevision's expense had Mr. Mayor not paid to ship them to his facility. Appellants argued that the post-production equipment was leased by AIM Group LLC, Mr. Mayor's personal holding company, not Cinevision, and that AIM Group or Mr. Mayor, not Cinevision, had paid off the unpaid balances owed on the leases. Moreover, they stated that the post-production film equipment had little or no value. Finally, they argued that the MoMedia

4

account receivable belonged to Cinevision Global, rather than Cinevision.

On March 12, 2015, the bankruptcy court granted summary judgment in favor of the Trustee. It held that the DVDs, post-production equipment, and $10,500 account receivable proceeds were property of the Debtor's estate pursuant to § 541 and that Mr. Mayor, Ms. Gunadi, and Cinevision Global failed to turn over those assets as required by § 542(a). The bankruptcy court granted a partial summary judgment holding that (1) the defendants were required to turn over the $10,500; (2) genuine issues of material fact exist as to the value of the DVDs and post-production equipment; and (3) the court may order the turnover of the DVDs and post-production equipment but not their value.

On May 15, the Trustee filed an application in the main bankruptcy case (not the adversary proceeding) requesting that the court issue an Order to Show Cause ("OSC") why Appellants should not be held in contempt for their willful violation of the automatic stay. On June 1, the court issued the OSC, ordering Appellants "to file a written explanation, if any, why they should not be held in civil contempt for their knowing violation of the automatic stay and turnover obligations (11 U.S.C. § 105(a) and 11 USC § 542(a))."

Later that same day, and presumably before they realized that the court had issued the OSC, Appellants filed an untimely opposition to the issuance of the OSC. They largely repeated their arguments in opposition to the motion for summary judgment in the adversary proceeding.

5

On June 10, Appellants filed their opposition to the OSC, in which they requested that the court consider the documents filed previously with their opposition to the issuance of the OSC and attached Mr. Mayor's supplemental declaration.

At the hearing on the OSC, the court acknowledged Appellants' responses, but referred to the opposition to the OSC as a "meaningless document," since it incorporated a late-filed opposition to the issuance of the OSC. The court further stated that "(a) they failed to disclose in their schedules; (b) they physically hid assets; (c) when requested later by the Trustee's representative to turn over the assets they declined to do so." It considered the "detailed findings and conclusions" in the adversary proceeding that "suggest[ed] to [the court] that the sanctions sought for contempt are appropriate and reasonable given the history of this case beginning back in 2011, converted eight months later in 2012, hidden assets, informal requests rejected, more formal written requests rejected, then litigated . . . ." The court also found that Ms. Gunadi, as a principal of Cinevision, participated in the evasion and disobedience.

On July 8, the court issued its Order and Judgment finding Appellants in contempt of court for violating the automatic stay and awarding the Trustee $99,745.24 in attorneys' fees. Appellants timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(b)(1), and 157(b)(2)(E). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

(1) Whether the bankruptcy court erred in sanctioning Appellants for their failure to turn over property of the Debtor's estate.

(2) Whether the Trustee is entitled to recover attorneys' fees incurred in defending against Appellants' appeal.

**STANDARD OF REVIEW**

"[W]hether property is property of the estate, and procedures for recovering property of the estate are questions of law reviewed de novo." White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008). Similarly, "[w]hether the automatic stay provisions of 11 U.S.C. § 362(a) have been violated is a question of law reviewed de novo." Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1213 (9th Cir. 2002) (citing Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission), 98 F.3d 1147, 1150 (9th Cir. 1996)). However, whether a party has willfully violated the automatic stay is a question of fact reviewed for clear error. Id. (citing McHenry v. Key Bank (In re McHenry), 179 B.R. 165, 167 (9th Cir. BAP 1995)). The amount of sanctions imposed for a willful violation of the stay is reviewed for an abuse of discretion. In re McHenry, 179 B.R. at 167.

**DISCUSSION**

**A. The bankruptcy court did not err in sanctioning Appellants for their willful refusal to turn over estate property.**

**1. Sections 542 and 362 require creditors and other entities to turn over property of the bankruptcy estate.**

"[T]he failure to return property of the estate with

7

knowledge of the bankruptcy is a violation of **both** the automatic stay and of the turnover requirements of the Bankruptcy Code." Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 822 (9th Cir. BAP 2010), disapproved on other grounds in later appeal, 473 B.R. 802 (D. Nev. 2012), aff'd, 764 F.3d 1168 (9th Cir. 2014) (quoting Abrams v. Sw. Leasing & Rental, Inc. (In re Abrams), 127 B.R. 239, 242-43 (9th Cir. BAP 1991)) (emphasis in original).

Section 542 governs turnover:

(a) Except as provided in subsection (c) or (d) of this section, **an entity**, other than a custodian, **in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease** under section 363 of this title, or that the debtor may exempt under section 522 of this title, **shall deliver to the trustee, and account for, such property or the value of such property**, unless such property is of inconsequential value or benefit to the estate.

§ 542(a) (emphases added). "[T]he turnover provisions of the Bankruptcy Code are to be self-effectuating, subjecting to sanctions a party that willfully fails to comply." In re Mwangi, 432 B.R. at 823 (citing In re Abrams, 127 B.R. at 242-43).

The refusal to turn over property rightfully belonging to the bankruptcy estate also violates the automatic stay under § 362(a)(3), which provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of -

. . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

8

§ 362(a)(3). "[T]he knowing retention of estate property violates § 362(a)(3)." In re Mwangi, 432 B.R. at 823 (citing In re Del Mission Ltd., 98 F.3d at 1151).

### 2. The court properly sanctioned Appellants pursuant to its civil contempt authority under § 105(a).

Appellants argue that the bankruptcy court lacked authority to sanction them.[4] We disagree.

Appellants first contend that § 362(h)[5] does not provide a basis for the Trustee to recover actual damages, since the Trustee is not an "individual." But the Trustee never sought sanctions under § 362(h). Rather, the Trustee contends that "§ 542(a) provided the right of the return of estate property, while 11 U.S.C. § 105(a) provided the remedy for the failure to do so." He also argues that the courts have the power to enter civil contempt orders and impose civil contempt sanctions.

The Trustee is correct. In Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178 (9th Cir. 2003), the Ninth Circuit stated that, even though a trustee may not recover under § 362(h), "we have held that the Trustee may be entitled to recovery for a violation of the automatic stay 'under section

---

[4] They also argue that the bankruptcy court did not specify the legal basis for its imposition of sanctions, but this is patently false; the bankruptcy court cited §§ 105(a) and 542(a) as the bases for the OSC.

[5] Following extensive revisions to the Bankruptcy Code in 2005, § 362(h) is now codified as § 362(k). It provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

9

105(a) as a sanction for ordinary civil contempt.'" Id. at 1189 (quoting Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th Cir. 1995)). The court went on to state that "[t]he standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." Id. at 1190-91 (quoting Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002)). "[T]here can be no doubt that the automatic stay qualifies as a specific and definite court order." Id. at 1191.

The Ninth Circuit held that § 362(h) and § 105(a) require the same mental state as a basis for sanctions. It stated:

> Under both statutes, the threshold question regarding the propriety of an award turns not on a finding of "bad faith" or subjective intent, but rather on a finding of "willfulness," where willfulness has a particularized meaning in this context:

> > "[W]illful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

Id. at 1191 (quoting In re Pace, 67 F.3d at 191).

In the present case, the bankruptcy court exercised its civil contempt authority "to remedy a violation of a specific order (including 'automatic' orders, such as the automatic stay or discharge injunction)[,]" see id. at 1196, by sanctioning Appellants for their violation of the automatic stay and awarding

10

the Trustee his attorneys' fees and costs.[6]  Appellants never denied, and the court found, that (1) Appellants knew of the automatic stay, and (2) Appellants' acts were intentional.  As such, the court did not err in concluding that Appellants were liable for sanctions due to their "willful breach of the automatic stay and knowing failure to turn over Property belonging to the Bankruptcy Estate[.]"

Appellants argue that sanctions are impermissible in the absence of an explicit finding of bad faith.  Appellants are incorrect.  "[T]he propriety of an award turns not on a finding of 'bad faith' or subjective intent, but rather on a finding of 'willfulness[.]'"  In re Dyer, 322 F.3d at 1191; see McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949) (because civil contempt serves a remedial purpose, "it matters not with what intent the defendant did the prohibited act"); In re Mwangi, 432 B.R. at 824 ("Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded." (citation omitted)).  Appellants' good faith might be relevant if the court had awarded sanctions pursuant to its inherent powers.[7]  But the

[6] Appellants do not seek review of the amount of the sanctions.

[7] The Ninth Circuit has held that, unlike in the case of sanctions pursuant to § 105(a), a finding of bad faith is required for sanctions pursuant to a court's inherent power:

Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct.  In this context, "willful misconduct" carries a different

(continued...)

11

bankruptcy court relied on § 105(a), not its inherent powers. Therefore, the court did not have to make a finding of bad faith or inquire into Appellants' intentions.

Appellants also argue that the Trustee cannot compel them to turn over property until the court has determined that the property must be turned over. Appellants again misinterpret their duties regarding turnover. Section 362(a)(3) does not require an order of the court. Rather, "to effectuate the purpose of the automatic stay, 'the onus to return estate property is placed upon the possessor[.]'" In re Mwangi, 432 B.R. at 823 (internal citation omitted). "It has long been the determination of this panel that the turnover provisions of the Bankruptcy Code are to be self-effectuating, subjecting to sanctions a party that willfully fails to comply." Id. (citing In re Abrams, 127 B.R. at 242-43). Appellants could have turned to the bankruptcy court for guidance regarding the disposition of the property, but they failed to do so. Instead, Appellants willfully violated the automatic stay by unilaterally deciding that they need not turn over the property. See id. at 823-24 (A creditor declining to release funds to the debtor "could have sought direction from the bankruptcy court, by way of a motion for relief from stay or otherwise, regarding the account funds; it did not. Instead, it chose to hold the funds until a demand

---

[7](...continued)
meaning than the meaning employed in the context of determining whether an individual is entitled to damages under § 362(h) or a contempt judgment under § 105(a) for an automatic stay violation.

In re Dyer, 322 F.3d at 1196 (internal citation omitted).

12

was made for payment that it alone deemed appropriate.").

The bankruptcy court did not err in sanctioning Appellants for their willful violation of the automatic stay and their failure to turn over property of the bankruptcy estate.

### 3. The bankruptcy court did not ignore the facts and arguments presented by Appellants in response to the OSC.

Appellants argue that the bankruptcy court erred by not considering the arguments raised in response to the OSC. The record does not support this contention.

Although the court characterized Mr. Mayor's declaration as a "meaningless document," the court in its oral ruling addressed the arguments raised by Appellants' counsel in his "papers":

> And although as you say, Mr. Smyth, **as your papers** say, that the -- that Mr. Mayor and Ms. Gunadi acted in good faith to assert what they thought was the case, I find nothing supporting that viewpoint in Judge Zurzolo's findings or conclusions of law. I find the opposite, that their claims were dismissed out of hand in detailed findings and conclusions.

(Emphasis added.) The bankruptcy court did not disregard Appellants' opposition to the OSC.

We also note that the court allowed Appellants' counsel to argue at length during the hearing on the OSC. Counsel had ample opportunity to raise relevant oral arguments before the court.

Moreover, even if the bankruptcy court erred in not considering Mr. Mayor's declaration and other written submissions, such error is harmless. Appellants contend that Mr. Mayor's declaration would have established Appellants' subjective belief that they were entitled to the property and did not have to turn it over. However, as discussed above, a creditor's good faith or subjective intent is not relevant to the

13

award of sanctions under § 105(a).  See In re Dyer, 322 F.3d at 1191.

**4.   The court did not err in sanctioning Ms. Gunadi.**

Appellants argue that the evidence does not support an award of sanctions against Ms. Gunadi.  We reject this argument.

The Trustee argues that the court decided in the adversary proceeding that Ms. Gunadi was responsible and that the doctrines of collateral estoppel and res judicata preclude relitigation of that ruling.  But the bankruptcy court never entered a final judgment in the adversary proceeding that could have preclusive effect.  See Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 528 (9th Cir. 1998) ("The 'doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or their privies.'" (citation omitted)); Fed. Deposit Ins. Corp. v. Jenson (In re Jenson), 980 F.2d 1254, 1257 (9th Cir. 1992) ("To be given preclusive effect, a judgment must be a final adjudication of the rights of the parties and must dispose of the litigation on the merits.").

The bankruptcy court entered both an order granting the motion for summary judgment and a separate judgment.  But both documents speak of a "partial summary adjudication."  The court denied judgment for the value of the property "absent further adjudication to determine the value of the Non-Monetary Estate Property."  The bankruptcy court never decided the issue of value and did not formally dismiss the balance of the Trustee's complaint.  Because the judgment did not dispose of all claims as

14

to all parties, it is not a final judgment with preclusive effect.

About a month after it entered the order and partial summary judgment, the bankruptcy court entered a minute order stating that "[t]he complaint filed in the above case has been disposed of," and providing that "[s]ince it appears that no further matters are pending that require this adversary proceeding [to] remain open, it is ordered that this adversary proceeding is closed." The "closing" of the adversary proceeding is an administrative step, not a final judgment on the merits that would have preclusive effect.

Even if the rulings in the adversary proceeding lack preclusive effect, the bankruptcy court did not err in relying on them. The bankruptcy court's holding in the adversary proceeding that Mr. Mayor, Ms. Gunadi, and Cinevision failed to turn over the DVDs, the post-production equipment, and the $10,500 as required by § 542(a) became law of the case. See United States v. Lummi Nation, 763 F.3d 1180, 1185 (9th Cir. 2014) ("Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." (internal citations omitted)).

Contrary to Appellants' contentions, the bankruptcy court did not sanction Ms. Gunadi merely because she is an officer of Cinevision. While the bankruptcy court did focus primarily on Mr. Mayor's actions, the court also found that Ms. Gunadi was to blame. The court stated at the hearing on the OSC:

> So it seems to me somewhat inappropriate for a principal of a debtor who filed a Chapter 11 bankruptcy petition later converted to Chapter 7 to . . .

15

challenge the Trustee's right to turn over of assets, as well as to fail to properly disclose assets. As I understand it, Mr. Mayor was licensed at some point by the - as a member of the California Bar and then Ms. Gunadi's papers on Mr. Mayor's behalf were filed by her as a member of the California Bar.

**That seems to me to be a violation of her responsibility as a principal of the debtor to aid in the turnover as opposed to resisting turnover and/or concealing assets.** So it seems to me that the responsibility is joint and several with respect to any sanction to be awarded in this case and I don't see a valid basis for excusing Ms. Gunadi from that responsibility.

(Emphasis added.) The court concluded that the "record of misconduct, non-cooperation, non-fulfillment of statutory duties . . . which both Mr. Mayor and Ms. Gunadi share . . . indicate that there should be a joint and several responsibility on the part of Mr. Mayor and Ms. Gunadi with respect to defiance of a court order, defiance of a statute." The record amply supports these factual findings.

The court also had a basis to find that Ms. Gunadi actively concealed the property, because the post-production film equipment was under the custody and control of Ms. Gunadi. The Trustee pointed out that the film equipment was located at the Debtor's business address that was "owned and controlled by Mr. Mayor's wife, Cindy Gunadi." The court subsequently found that the equipment was located at Cinevision's offices at that address. The bankruptcy court properly found that, when Ms. Gunadi failed to turn over the property within her control, she willfully violated §§ 362 and 542.

Thus, the bankruptcy court did not err in sanctioning Ms. Gunadi.

16

### 5. The court did not err in considering the findings made in the adversary proceeding.

Appellants argue that the bankruptcy court erred in relying upon the factual findings from the motion for summary judgment in the adversary proceeding, because the evidentiary standard differs between a motion for summary judgment and a motion for sanctions. We will not address this issue for two reasons.

First, Appellants first addressed this issue in their reply brief. This is improper. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) ("on appeal, arguments not raised by a party in its opening brief are deemed waived"); Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir. 1990) ("It is well established in this circuit that [t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs." (citation and internal quotation marks omitted)); Rule 8014(a)(8) (An appellant's brief must include "the argument, which must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").

Second, Appellants did not adequately present this issue to the bankruptcy court. See Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) ("[F]ederal appellate courts will not consider issues not properly raised in the trial courts. . . . An issue only is 'properly raised' if it is raised sufficiently to permit the trial court to rule upon it." (internal citations omitted)).

Appellants' papers mentioned the argument only in a garbled

17

and unfinished paragraph in their opposition to the OSC.[8] At the hearing on the OSC, Appellants' counsel mentioned the issue only in a single sentence before the court ruled and again after the judge had begun to render his oral ruling. Appellants never offered any legal authority in support of their position. The bankruptcy court did not err.

**B.    The Trustee is not entitled to attorneys' fees on appeal.**

The Trustee requests that we award him his attorneys' fees in defending against this appeal, claiming that a successful party may be awarded fees when the opposing party has acted in bad faith, vexatiously, wantonly, or oppressively. He argues that Appellants have acted to vex and annoy, because the "appeal is nothing other than a collateral attack on the Adversary Action's Judgment."

We are unable to provide the Trustee the relief he seeks. Section 105(a) does not authorize an award of attorneys' fees on appeal, and "the only authority for awarding discretionary appellate fees in bankruptcy appeals is [Civil] Rule 38." In re Del Mission Ltd., 98 F.3d at 1154. Rule 8020(a), which

---

[8] The relevant portion of Appellants' incomplete objection reads:

> Plaintiff now is requesting an OSC re contempt on the basis that the granting of the partial summary judgment indicates that "clear and convincing evidence" supports a finding of contempt of court for failure to turn over assets of the estate. This, in spite of the fact, that the standard for granting a summary judgment does not require that the evidence be "clear and

Appellants did not mention or expand upon this argument in the remainder of their opposition.

18

conforms to Civil Rule 38, states: "If the district court or BAP determines that an appeal is frivolous, it may, **after a separately filed motion** or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Rule 8020(a) (emphasis added).

In the present case, the Trustee requests an award of attorneys' fees on appeal in his answering brief, not in a "separately filed motion." "A request made in an appellate brief does not satisfy [Civil] Rule 38." In re Del Mission Ltd., 98 F.3d at 1154 (citing Gabor v. Frazer, 78 F.3d 459, 459-60 (9th Cir. 1996)). Thus, we deny the Trustee's request for attorneys' fees on appeal.

**CONCLUSION**

For the reasons set forth above, we conclude that the bankruptcy court did not err in sanctioning Appellants for their refusal to turn over property of the bankruptcy estate. Accordingly, we AFFIRM.