**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re: ) BAP No. CC-13-1418-KiLaPa
)
RICHARD STEPHEN KVASSAY, ) Bk No. 11-11698-PC
)
              Debtor. ) Adv. No. 13-01553
)
_____ )
)
RICHARD STEPHEN KVASSAY, )
)
              Appellant, )
)
v. ) **M E M O R A N D U M**[1]
)
ROBERT V. KVASSAY, Trustee of )
the Kvassay Family Trust )
dated 02/26/1993; RUSSAKOW, )
GREENE & TAN LLP, )
)
              Appellees. )
_____ )

Argued and Submitted on May 15, 2014,
at Pasadena, California

Filed - May 30, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Chief Bankruptcy Judge, Presiding

_____

Appearances: Troy A. Stewart, Esq. argued for appellant, Richard
Stephen Kvassay; Richard R. Clements, Esq. argued
for appellees, Robert V. Kvassay and Russakow,
Greene & Tan LLP.

_____

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

Before: KIRSCHER, LATHAM[2] and PAPPAS, Bankruptcy Judges.

Chapter 7[3] debtor Richard Kvassay ("Debtor") appeals an order granting appellees' motion to dismiss Debtor's adversary complaint with prejudice under Civil Rule 12(b)(6). Appellees are Debtor's brother, Robert Kvassay ("Robert"), trustee of the Kvassay Family Trust dated 02/26/1993 ("Trust") and the law firm representing Robert, Russakow, Greene & Tan LLP ("Law Firm")(collectively, "Defendants"). We AFFIRM.[4]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.** **Events leading to Debtor's adversary proceeding against Defendants**

Debtor and his two brothers, Robert and Peter Kvassay ("Peter"), were to have equal beneficial interests in the principal of the Trust. The trustors, the brothers' parents, were deceased by 2006. Until recently, Debtor had lived at his parents' three and a half-acre estate and residence in Los Angeles ("Trust Property") since the 1960s; Peter had lived there since the 1980s. Once under Debtor's and Peter's control, the Trust

---

[2] Hon. Christopher Latham, Bankruptcy Judge for the Southern District of California, sitting by designation.

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] The parties have asked us to take judicial notice of certain documents filed in the state court and a docket summary from the California Court of Appeal. Neither party has objected to the other's request. It is undisputed that these documents were not presented to the bankruptcy court. Generally, we will not consider evidence on appeal that was not before the trial court when it made its decision. See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001). Because the documents have no bearing on our decision, we DENY both requests for judicial notice.

-2-

Property became uninhabitable, and Robert had to invest hundreds of thousands of dollars of his own funds to repair it and make it sellable. He also had to obtain a personal loan to save the Trust Property from foreclosure after Peter stopped paying on a $1.5 million loan he obtained against the Trust Property by misrepresenting himself as the trustee of the Trust.

In May 2010, Robert, with the Law Firm's assistance, filed a probate petition in the state court seeking to (1) evict Debtor and Peter from the Trust Property and (2) offset Debtor's and Peter's distributive share in the Trust ("Probate Action")(Case No. BP122477).

On August 18, 2010, the probate court entered a minute order evicting Debtor and Peter from the Trust Property (the "Eviction Order"). Debtor and Peter appealed. On October 7, 2010, a third party posted a cash deposit of $216,000 made in lieu of an appeal bond to stay enforcement of the Eviction Order ("Appeal Bond").[5] The $216,000 was based on a fair rental market value of the Trust Property at $12,000 per month, multiplied by 18 months — the anticipated length of time for Debtor and Peter's appeal to be completed. Debtor and Peter were allowed to reside at the Trust Property pending the appeal.

On January 13, 2011, while the appeal of the Eviction Order

_____

[5] Although the funds at issue were a cash deposit made in lieu of an appeal bond, both the state court and the parties have referred to it as an "appeal bond." Therefore, we do as well for consistency. Under CAL. CIV. PROC. § 995.730, bonds and cash deposits are treated in the same manner:

A deposit given instead of a bond has the same force and effect, is treated the same, and is subject to the same conditions, liability, and statutory provisions, including provisions for increase and decrease of amount, as the bond.

-3-

was pending, Debtor filed a chapter 11 bankruptcy case, which was later converted to chapter 7. In June 2011, the chapter 7 trustee filed an application to employ counsel to assist him in, among other things: (1) determining the nature and extent of Debtor's beneficial interest in the Trust and the Appeal Bond; and (2) liquidating Debtor's beneficial interest in the Trust and the Appeal Bond by resolving the Probate Action.

In September 2011, Robert moved for relief from the automatic stay to proceed with the Probate Action, Case No. BP122477 ("Stay Relief Motion"). Robert requested an order allowing him to proceed to a final judgment in the matter, "provided that the stay remain[ed] in effect with respect to enforcement of any judgment against Debtor(s) or estate property." Attached was a copy of the complaint from the Probate Action. The chapter 7 trustee initially opposed the Stay Relief Motion, contending that he needed more time to investigate the pending Trust litigation. He later withdrew his objection at the related hearing on October 6, 2011. Debtor did not oppose the Stay Relief Motion.

On October 21, 2011, the bankruptcy court entered an order granting Robert's Stay Relief Motion under § 362(d)(1)("Stay Relief Order"). It provided that Robert could "proceed in the non-bankruptcy forum to final judgment (including any appeals) in accordance with applicable non-bankruptcy law." In Paragraph 6 of the order — Limitations on Enforcement of Judgment — neither box is checked, indicating that no limitations were imposed restricting Robert's enforcement of any final judgment(s) he received against Debtor. Litigation in the Probate Action continued.

-4-

On February 3, 2012, the California Court of Appeal affirmed the Eviction Order, Kvassay v. Kvassay, 2012 WL 336117 (Cal. Ct. App. Feb. 3, 2012 (unpublished), review denied (Apr. 18, 2012), and issued its remittitur on May 9, 2012. Debtor and Peter were ultimately evicted from the Trust Property on May 21, 2012.

On April 23, 2012, Robert, represented by the Law Firm, moved to release the full amount of the Appeal Bond to the Trust "now that the appeal has been decided in favor of Petitioner." The probate court denied Robert's first bond motion because it had been filed before the remittitur was issued. Robert filed a second motion to release the Appeal Bond to the Trust on June 26, 2012. He contended the Trust was entitled to the full amount because the appeal process had taken more than 20 months. Debtor and Peter opposed the release of the Appeal Bond.

In response to Robert's actions, the chapter 7 trustee filed a motion for production of documents under Rule 2004, asserting that because Robert was seeking to have the Appeal Bond released to the Trust, he wanted access to Debtor's bank records to evaluate whether the Appeal Bond was a potential asset of the bankruptcy estate. The bankruptcy court granted the Rule 2004 motion.

After an evidentiary hearing on Robert's second motion to release the Appeal Bond, the probate court entered a minute order on December 12, 2012, which stated: "Judgment is entered in the amount of $192,660.00, joint and severally against [Debtor and Peter]. As to the balance of funds, there shall be no further funds released pending the outcome of the Bankruptcy or further court order."

-5-

On January 24, 2013, the probate court entered an "Amended Order re. Release of Bond" in connection with its December 12 minute order, directing that $192,660 be paid from the Appeal Bond on deposit with the court to Robert, trustee of the Trust ("Amended Bond Order").

On January 29, 2013, Debtor and Peter filed a Petition for Peremptory Writ of Prohibition and/or Writ of Mandate in the California Court of Appeal, seeking to vacate the Amended Bond Order, and on February 6, 2013, filed a notice of appeal. The writ was denied. Defendants thereafter took possession of $192,660 of the $216,000 Appeal Bond. The California Court of Appeal affirmed the Amended Bond Order on May 14, 2014. Kvassay v. Kvassay, 2014 WL 1913307 (Cal. Ct. App. May 14, 2014) (unpublished).

On May 9, 2013, upon request of the chapter 7 trustee, the bankruptcy court entered an order abandoning any potential interest of the bankruptcy estate in the Probate Action and the Appeal Bond due to their inconsequential value to the estate.

**B.    Debtor's adversary complaint and Defendants' motion to dismiss**

On May 22, 2013, Debtor filed an adversary complaint ("Complaint"), contending that Defendants had violated the automatic stay under § 362(a)(1) and (a)(6) by:

(1) filing state court motions to obtain a judgment against Debtor to enforce against the Appeal Bond without obtaining relief from stay to file the motions;

(2) obtaining the judgment against Debtor to enforce against the Appeal Bond without obtaining relief from stay to pursue the judgment against him;

(3) obtaining the first bond order and Amended Bond Order

-6-

without obtaining relief from the stay to enforce the judgment against Debtor; and

(4) executing the Amended Bond Order and taking possession of $192,660.00 of the Appeal Bond without obtaining relief from the stay to enforce the judgment against Debtor.

Specifically, Debtor asserted that the Stay Relief Order provided only that Robert could proceed to final judgment in the Probate Action as to the "causes of action pleaded in the non-bankruptcy forum," and those causes of action did not include a claim for a judgment against Debtor to enforce against the Appeal Bond and that the claim underlying the judgment Robert obtained against Debtor on December 12, 2012, was not pending in the state court. Alternatively, Debtor argued that Defendants had violated the stay by pursuing a judgment against him that was not "final" due to the pending appeal. Debtor also alleged that Defendants should be held in contempt under § 105(a) for their willful violation of the Stay Relief Order. Debtor sought damages in excess of $70,000 under either § 362(k) or § 105(a).

On July 3, 2013, Defendants electronically filed their Notice of Motion and Motion to Dismiss the Complaint under Civil Rule 12(b)(6) ("Motion to Dismiss") under the event code "Notice of Motion/Application."[6] Defendants' Notice and Motion to Dismiss were labeled accordingly but were combined into one document. The attached proof of service stated that the Notice and Motion to Dismiss were served electronically and by mail to Debtor's counsel

_____

[6] The entry in the bankruptcy court's docket no. 9 states: "Notice of motion/application *Defendants' Notice of Motion and Motion to Dismiss Complaint; Memorandum of Points and Authorities* Filed by Defendant Kvassay Robert V Trustee of the Kvassay Family Trust dated February 26, 1993. (Clements, Richard)(Entered: 07/03/2013)[.]"

-7-

on July 3.

Defendants contended that Debtor was reading the Stay Relief Order too narrowly. Contrary to Debtor's interpretation, Robert's actions were not limited to just the causes of action existing at the time it was entered on October 21, 2011; the order clearly covered a judgment against Debtor that could be enforced against the Appeal Bond. Defendants further argued the Complaint was procedurally improper; damages and injunctive relief under § 362(k) had to be sought by motion rather than through an adversary proceeding. The same was true for contempt relief under § 105(a); contempt actions had to be brought by motion per Rule 9020. Alternatively, argued Defendants, because Debtor had no claim for a willful violation of the stay, they could not be found in contempt under § 105 in any event. Defendants requested that the Motion to Dismiss be granted without leave to amend and that the adversary proceeding be dismissed with prejudice. The Notice and Motion to Dismiss stated that a hearing was scheduled for August 8, 2013.

On July 15, 2013, Defendants received a "Notice to Filer of Error and/or Deficient Document" from the bankruptcy court clerk advising Defendants that an incorrect event code was used to file the Motion to Dismiss. Defendants were instructed **"TO RE-FILE THE DOCUMENT USING THE CORRECT EVENT.** THIS DOCUMENT IS A MOTION THE CORRECT EVENT CODE IS MOTION TO DISMISS." (Emphasis in original). Defendants did as instructed, and on July 16, 2013, refiled the same document under the correct event code. See docket no. 12. The refiled Motion to Dismiss was identical to the original Motion to Dismiss, including the attached proof of service showing

service on July 3, 2013.

Instead of filing a response to the Motion to Dismiss, Debtor filed a first amended complaint ("FAC") on July 30, 2013. The FAC alleged the same stay violation claims under § 362(a)(1) and (a)(6), added a new claim under § 362(a)(5), and sought relief under § 362(k)(1). The contempt claim under § 105(a) was omitted.

## C. The bankruptcy court's ruling on the Motion to Dismiss

A hearing on Defendants' Motion to Dismiss was held on August 8, 2013. At the start, counsel for Debtor informed the bankruptcy court that the FAC had been filed on July 30, thereby mooting the Motion to Dismiss. The court was aware of the FAC but considered it untimely. When Debtor contended that an amended complaint could be filed as a matter of course under Civil Rule 15(a), the court disagreed, noting that the time allowed in the rule to file an amended complaint had already expired:

> The defendant initially filed the [Motion to Dismiss] on July 3, 2013 but . . . the defendant used an incorrect event code. The clerk notified the defendant to correct the error, which defendant did by re-filing the motion on July 16, 2013. The proof of service attached to the re-filed motion reflects that the motion was served by first-class mail on July 3, 2013. The Court's added three extra days for service by mail, so the Rule 15(a) deadline to file the [FAC] based on service of the motion was July 29, 2013 as July 27th fell on a Saturday. The [FAC] was filed on July 30th, so it was one day late.

Hr'g Tr. (Aug. 8, 2013) 4:18-5:5.

After hearing briefly from the parties and noting that no opposition had been filed, the bankruptcy court announced its tentative ruling to strike the FAC as untimely and grant the Motion to Dismiss without leave to amend, noting that its ruling would not change even if it considered the FAC a proper opposition. Debtor's use of an adversary proceeding, as opposed

-9-

to a motion, did not constitute grounds to dismiss the Complaint. However, the Complaint failed to state a plausible claim for relief under § 362(k)(1):

> The Court's relief from stay order, which is the basis of the complaint, included language . . . that all actions . . . may be taken in the probate action to proceed to final judgment including any appeals in accordance with applicable non-bankruptcy law. And the Court's reading of the complaint filed with the Court does not indicate that there were any actions taken by the defendant that was outside of or in violation of the Court's order entered on October 21, 2011.

> There's no facts [sic] in the complaint that would state a plausible claim that the defendant took any separate actions against the plaintiff outside the probate action to enforce the Probate Court's order personally as to the debtor. Estate funds were not used to post the appeals bond of the – funds used to post the appeal bond were provided by a third party.

Id. at 7:17-8:9. Likewise, the Complaint failed to state a plausible claim for contempt of the Stay Relief Order under § 105(a).

Unpersuaded by Debtor's further arguments, the bankruptcy court adopted its tentative ruling in favor of Defendants as its final ruling, and further stated:

> When we get down to the rub of this complaint, it involves a dispute concerning an appeal bond that was posted in the state court action and steps taken in conjunction with the appeal to adjudicate the parties' right to that appeal bond. The appeal bond of $216,000 – it was a deposit in lieu of an appeal bond actually posted by a third party. It's non-estate funds. The fact that the trustee in the bankruptcy case investigated whether any part of that $216,000 could possibly be property of the estate is part of the trustee's duties under Section 704 of the Bankruptcy Code . . . . The trustee made a determination that those funds are not property of the estate . . . .

> The Court in reviewing the four corners of the original complaint filed in this case and the facts stated in that complaint cannot find sufficient facts that support or state a plausible claim for relief for violation of this Court's order granting relief from the automatic stay

-10-

either under Section 362(k) or for willful contempt of the order under Section 105. For those reasons, the motion to dismiss under Rule 12(b)(c) [sic] is granted. It's granted without leave to amend, particularly in light of the fact that no response in opposition to the motion was filed specifically addressing the issues raised in the motion.

And the amended complaint that was filed, evidently in lieu of filing a proper response under our rules to the motion, was filed without the consent of the defendant prior to the filing of the motion and it was untimely under Rule 15(a).

Id. at 15:18-16:3, 16:6-7, 16:12-17:2.

An order granting Defendants' Motion to Dismiss the Complaint without leave to amend and dismissing Debtor's adversary proceeding with prejudice was entered on August 13, 2013. Debtor timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in determining that the Motion to Dismiss was filed and served on July 3 rather than on July 16, and thus Debtor's FAC filed on July 30 was untimely?

2. Did the bankruptcy court err in dismissing the Complaint under Civil Rule 12(b)(6)?

3. Did the bankruptcy court abuse its discretion in denying Debtor leave to amend his Complaint?

## IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's interpretation of the Federal Rules of Bankruptcy Procedure. Am. Sports Radio Network, Inc. v. Krause (In re Krause), 546 F.3d 1070, 1073 n.5 (9th Cir. 2008).

-11-

Whether property is property of the estate is a question of law reviewed de novo. Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010)(citing White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008)).

The bankruptcy court's dismissal of an adversary proceeding for failure to state a claim under Civil Rule 12(b)(6) is reviewed de novo. N.M. State Inv. Council v. Ernst & Young LLP, 641 F.3d 1089, 1094 (9th Cir. 2011); Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011). A denial of leave to amend is reviewed for abuse of discretion. Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004)(citation omitted). However, it is not error for the trial court to deny leave to amend where the amendment would be futile. Id. (citing Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991)).

## V. DISCUSSION

**A. Defendants were not required to serve the refiled Motion to Dismiss, and therefore the FAC was untimely.**

Under Civil Rule 15(a)(1)(B), applicable here by Rule 7015, "if [a] pleading is one to which a responsive pleading is required," a "party may amend its pleading once as a matter of

-12-

course within . . . 21 days after service of a motion to dismiss under [Civil] Rule 12(b) . . . ."  Under Civil Rule 5(a)(1)(D) & (E), applicable here by Rule 7005, a written motion and a written notice must be served on every party that has appeared in the action.

Virtually all of Debtor's arguments stem from his contention that Defendants failed to serve the refiled Motion to Dismiss filed on July 16, 2013, as required, which precluded him from timely filing the FAC within 21 days of service of the refiled motion.  Thus, argues Debtor, the bankruptcy court could not have found the FAC was untimely under Civil Rule 15(a)(1)(B). Defendants argue that Debtor is raising this issue for the first time on appeal, and therefore we should disregard it.

Generally, the Panel cannot consider arguments that were not raised or briefed before the bankruptcy court.  Katz v. Pike (In re Pike), 243 B.R. 66, 69 (9th Cir. BAP 1999)(citing Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 515 (9th Cir. 1992)). However, we have the discretion to consider an argument raised for the first time on appeal if the "'issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.'"  Id. (quoting Boker v. C.I.R., 760 F.2d 1039, 1042 (9th Cir. 1985)). We agree that this argument was not expressly raised before the bankruptcy court.  Nonetheless, in reviewing the transcript, counsel for Debtor appeared surprised when the bankruptcy court informed him that the FAC filed on July 30, 2013, was untimely based on the July 3 service date of the Motion to Dismiss. Implicit in the court's finding was that the refiled Motion to

-13-

Dismiss filed on July 16, 2013, which the court expressly referenced, did not have to be served on Debtor, and so the 21-day time period for Debtor's responsive pleading started to run on July 3, 2013.  See Rule 9006(f).  Because of the court's implicit finding, and because the question before us is purely one of law and the record is fully developed, we exercise our discretion to consider the issue.

If a pleading that requires service to other parties is electronically filed and served by mail but was filed under the wrong event code, does Civil Rule 5 require service when the same pleading is refiled under the correct event code?  We think not.

The bankruptcy court clerk instructed Defendants on July 15, 2013, to refile their Motion to Dismiss under the correct event code, which they did on July 16, 2013.  The clerk did not instruct Defendants to also serve the refiled motion.  Citing to no authority other than Civil Rule 5(a)(1)(D) & (E), Debtor contends that because of the refiling, Defendants were required to serve the refiled Motion to Dismiss and Notice thereto.  Section 3.5(h) of the Court Manual,[7] which addresses errors in electronic

---

[7] Court Manual § 3.5(h) entitled "Correcting Documents Filed in Error" provides:

(1) When a document has been filed electronically, the official record is the electronic recording of the document as stored by the court.  Only the Clerk's Office can make changes to the docket entry.

(2) A document incorrectly filed in a case may be the result of posting the wrong PDF file to a docket entry, selecting the wrong document type from the menu, or entering the wrong case number.  If an error is detected after an item is on the docket, DO NOT ATTEMPT TO RE-FILE THE DOCUMENT.

continue...

-14-

filings, is silent as to whether an incorrectly filed document must be served again once refiled. Likewise, the "FAQ" for CM/ECF does not address it.[8] Local Rule 5005-4 — Electronic Filing — is also silent on this matter. Therefore, we must turn to other authority.

Neither party has cited, and we could not locate, a case involving this exact issue. However, we found several cases involving similar electronic filing errors. In <u>Farzana K. v. Ind. Dep't of Educ.</u>, 473 F.3d 703 (7th Cir. 2007), plaintiff's attorney had thirty days from which to file a complaint after a final administrative decision had been issued. On the 30th day, the attorney electronically filed a complaint, but filed it in the plaintiff's former case that had been dismissed two years prior. The computer rejected the filing with the notation that the case had been closed. <u>Id.</u> at 704. Two days later, plaintiff's

---

[7]...continue
(3) After an error is discovered, contact the CM/ECF Help Desk at (213) 894-2365 as soon as possible. Be sure to have the case number and document number for which the correction is being requested. If appropriate, the court will make an entry indicating that the document was filed in error. You will be advised if you need to re-file the document. The CM/ECF system will not permit you to make changes to a document or docket entry once the transaction has been accepted.

(4) If an error regarding a fee occurs, do not pay the fee until after speaking with someone at the CM/ECF Help Desk.

[8] Question no. 31 of the FAQ found at www.cacb.uscourts.gov/cmecf-frequently-asked-questions (last visited on May 29, 2014) states: "What happens if a document is filed in error? Email the ECF Help Desk at ECF_Support@cacb.uscourts.gov immediately after you discover an error has occurred. Incorrect entries or PDFs will not be deleted. Errors may be edited by court personnel only. A corrective entry by the Court may be required. An e-mail is generated whenever a corrective entry is made."

-15-

attorney filed a new complaint that was identical to the first one, except that the space for the docket number was left blank and the word "amended" had been deleted. The district court held that the later-filed complaint was untimely and dismissed the suit. Id. at 705. Relying on the mandate provided in Civil Rule 5(e),[9] now Civil Rule 5(d)(4), that court clerks must accept filings despite formal defects, and equating the attorney's mistake to filing paper copies with the wrong docket number written in, the Seventh Circuit reversed, holding that the complaint was timely filed despite the electronic filing error.[10] Id. at 706-07.

> Still, the fact remains that the complaint was tendered to the clerk's office on the 30th day, and the computer's reaction does more to show the limits of some programmer's imagination than to render the suit untimely. Had a paper copy of the complaint been handed over the counter on July 6, a deputy clerk would have crossed out the old docket number, stamped a new one, and filed the document; there is no reason to throw this suit out of court just because the e-filing system did not know how to take an equivalent step.

Id. at 707.

In Weeks Landing, LLC v. RCMP Enters., LLC, 439 B.R. 897

---

[9] Former Civil Rule 5(e) read, in relevant part: "The clerk shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules of practices." That rule has now been amended to Civil Rule 5(d)(4), which provides: "The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."

[10] The Farzana K court reasoned that the "software that operates an e-filing system acts for 'the clerk' as far as Rule 5 is concerned; a step forbidden to a person standing at a counter is equally forbidden to an automated agent that acts on the court's behalf." 473 F.3d at 707.

-16-

(M.D. Fla. 2010), plaintiff's attorney incorrectly filed an adversary complaint in the debtor's main bankruptcy case. Two days later, the clerk issued a form "Order of Conditional Dismissal" instructing the attorney to refile the complaint in an adversary proceeding. Id. at 906. The attorney did as instructed, but not until several days past the filing deadline. The second complaint was identical to the first. Id. Defendants moved to dismiss the complaint with prejudice due to its untimeliness, and the bankruptcy court granted the motion. Id. at 907-08. Relying on Civil Rule 5(d)(4) and Rule 5005(a)(1),[11] the district court reversed, holding that the adversary complaint was timely filed despite the electronic filing error. Id. at 909. Accord Shuler v. Garrett, 715 F.3d 185, 187 (6th Cir. 2013) (relying on Civil Rule 5(d)(4) to hold that Civil Rule 59 motion electronically filed under incorrect docket number was timely filed notwithstanding counsel's filing mistake, particularly since defendants were also served paper copies of the motion at the time it was filed incorrectly).

Finally, in Vince v. Rock Cnty., Wis., 604 F.3d 391 (7th Cir. 2010), appellant's counsel electronically filed a notice of appeal on the last day of the appeal period, but used the wrong event code. The clerk's office discovered the error and notified counsel of the mistake in an email three days later, directing him to refile it with the correct event code. Counsel complied, and

[11] Rule 5005(a)(1) provides, in relevant part: "The clerk shall not refuse to accept for filing any petition or other paper presented for the purpose of filing solely because it is not presented in proper form as required by these rules or any local rules or practices."

-17-

the second transmission of the notice of appeal was sent six days after the appeal time had expired, causing the court staff to question the timeliness of the appeal. Relying on Civil Rule 5(d)(4) and its prior holding in Farzana K, the Seventh Circuit held that the notice of appeal was timely filed, even though initially filed under the wrong event code. Id. at 393. The Vince court observed that filing documents under the wrong event code is the most common electronic filing error listed in the manual for the Western District of Wisconsin. Id.

We are persuaded by Farzana K, Weeks Landing, Shuler and Vince, and hold that Civil Rule 5 did not require Defendants to serve the Motion to Dismiss when it was refiled under the correct event code on July 16, 2013. Undisputedly, if it were not for electronic case filing, we would not be here. The caption on Defendants' Motion to Dismiss states that it is a "Notice of Motion and Motion to Dismiss Complaint; Memorandum of Points and Authorities." Thus, it is clear to anyone reading the caption what Defendants filed. Further, if a paper filing had occurred, the clerk had nothing to correct, which is unlike the circumstances in Farzana K, Weeks Landing and Shuler.

Noticeably absent from these cases and particularly Vince, which involved the use of a wrong event code, is the court's instruction that the incorrectly filed document had to be served again once it was properly filed. The error here was due strictly to a nuance that exists only because of electronic filing. It is an error of form rather than substance. Thus, we cannot conclude that Defendants' refiling of the Motion to Dismiss under the correct event code on July 16, 2013, triggered the service

-18-

requirements under Civil Rule 5(a)(1)(D) & (E). Had the motion been altered, however, the outcome would be different.

Debtor argues that the refiled Motion to Dismiss was the operative motion that set the matter for hearing, not the original filing, which he argues was rejected by the clerk and is wholly irrelevant to the bankruptcy court's application of Civil Rules 15(a)(1)(B) and 5(a)(1)(D). First, we disagree that the Motion to Dismiss filed on July 3 was "rejected." Under Civil Rule 5(d)(4) and Rule 5005(a)(1) the clerk was not allowed to reject it. "An e-filing system likewise must accept every document tendered for filing; it cannot reject any paper that the clerk must accept." Farzana K, 473 F.3d at 708. In this case, the clerk would never have rejected it in the first place because, on the face of it, no error existed.

We also disagree with Debtor's contention that the hearing would not have been set had Defendants not refiled the motion, so therefore it must be the operative motion. Docket no. 11, which immediately follows the July 15 error notice and was also entered on July 15, is an entry by the clerk setting the Motion to Dismiss for hearing on August 8. Thus, the refiling of the motion on July 16 was not the prerequisite for the hearing to be set.[12]

---

[12] Debtor raises for the first time in his reply brief that the reason Defendants were instructed to refile the Motion to Dismiss was because they failed to comply with Local Rule 9013-1(c)(2) and (3) and file the "Notice of Motion"and "Motion" as separate documents, and until they did so, the matter could not be set for hearing. Local Bankruptcy Rules 9013-1(c)(2) and (3) provide:

**(c) Form and Content of Motion and Notice.**

continue...

-19-

Defendants were not required to serve the Motion to Dismiss when it was refiled on July 16 due to being filed under a wrong event code on July 3. Debtor does not dispute receiving notice of the Motion to Dismiss by mail when it was filed on July 3. Therefore, the FAC had to be filed by July 29. It was not filed until July 30. As such, Debtor was not allowed to file an amended complaint without consent from Defendants or leave of court, neither of which he had. Civil Rule 15(a)(1)(B); 6 Wright, Miller & Kane, Fed. Practice and Proc. § 1480 (3d 2010)(when the 21-day time period has expired to file an amended complaint as a matter of course, Civil Rule 15(a)(1) no longer applies and an amendment falls under Civil Rule 15(a)(2), which requires leave of court or

---

[12]...continue
    (2) Notice of Motion. Every motion must be accompanied by written notice of motion specifying briefly the relief requested in the motion and, if applicable, the date, time, and place of hearing. Except as set forth in LBR 7056-1 with regard to motions for summary judgment or partial summary adjudication, or as otherwise ordered, the notice of motion must advise the opposing party that LBR 9013-1(f) requires a written response to be filed and served at least 14 days before the hearing. If the motion is being heard on shortened notice pursuant to LBR 9075-1, the notice must specify the deadline for responses set by the court in the order approving the shortened notice.

    (3) Motion. There must be served and filed with the motion and as a part thereof:
    (A) Duly authenticated copies of all photographs and documentary evidence that the moving party intends to submit in support of the motion, in addition to the declarations required or permitted by FRBP 9006(d); and
    (B) A written statement of all reasons in support thereof, together with a memorandum of the points and authorities upon which the moving party will rely.

Although we are not really sure how this argument helps Debtor, nothing in the rules state that the Notice of Motion and Motion must be filed separately, or that failure to do so will not set a matter for hearing. As discussed above, the clerk set the Motion to Dismiss for hearing before Defendants even refiled it.

written consent of the opposing party). Accordingly, the bankruptcy court did not err in striking the FAC as untimely.

**B. The bankruptcy court did not err in granting the Motion to Dismiss under Civil Rule 12(b)(6) and dismissing the Complaint.**

Under Civil Rule 12(b)(6), made applicable in adversary proceedings through Rule 7012, a bankruptcy court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." In reviewing a Civil Rule 12(b)(6) motion, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. Newcal Indus., Inc. v. Ikon Office Solutions, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). To avoid dismissal under Civil Rule 12(b)(6), a plaintiff must aver in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (citation omitted).

A debtor may request and obtain sanctions against a creditor if it willfully violated the automatic stay. See § 362(k). A creditor willfully violates the automatic stay if it knew of the automatic stay and intentionally acted in violation of it. Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1215 (9th Cir. 2002)(analyzing automatic stay violation under former § 362(h)).

Debtor contends that the bankruptcy court erred in granting the Motion to Dismiss and dismissing the Complaint for two

-21-

reasons. First, the court erred by failing to consider whether or not the Amended Bond Order was a final judgment. Debtor argues that the Stay Relief Order authorized Robert to enforce only "final" judgments and, therefore the Defendants violated the Stay Relief Order by enforcing the Amended Bond Order, which was still on appeal and not final.[13] Second, Debtor argues Defendants' claim to enforce the Appeal Bond, which Debtor characterizes as a personal judgment against him, is a separate and distinct claim for relief under California law that was not disclosed to the bankruptcy court or authorized by the Stay Relief Order. Thus, argues Debtor, the bankruptcy court erred in concluding that Defendants' pursuit of the Appeal Bond was merely part and parcel of the Probate Action. Debtor also argues that no factual basis existed for the bankruptcy court to determine that the $216,000 Appeal Bond was "non-estate funds," since any potential estate interest in it was not abandoned until after Defendants took the violative actions.

In reviewing the Stay Relief Order, the bankruptcy court determined that Defendants' attempt to recover on the Appeal Bond was not an action separate from the Probate Action, and therefore did not violate the automatic stay or provide a basis for contempt. "We accord substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced it amounts to an abuse of discretion." Rosales v. Wallace (In re Wallace), 490 B.R. 898, 906 (9th Cir. BAP 2013)(citing Marciano v. Fahs (In re Marciano),

---

[13] As noted earlier, the California Court of Appeal affirmed the Amended Bond Order on May 14, 2014.

-22-

459 B.R. 27, 35 (9th Cir. BAP 2011)). We are not convinced the bankruptcy court's interpretation of the Stay Relief Order was an abuse of discretion. We agree that Defendants' pursuit of the Appeal Bond was not an action taken outside of the authorized Probate Action, Case No. BP122477.

Debtor is correct that the bankruptcy court did not expressly address the finality of the Amended Bond Order, which was still on appeal when Defendants sought to recover on the Appeal Bond, and whether they violated the Stay Relief Order by pursuing the funds. However, this is of no moment, because the Appeal Bond was never estate property.

In its ruling, the bankruptcy court implied that it was granting the Motion to Dismiss because the Appeal Bond was non-estate funds, so, therefore, Defendants could not have violated the automatic stay in any event. The Appeal Bond at issue was actually a $216,000 cash deposit in lieu of an appeal (or supersedeas) bond. It was posted to protect the Trust from any further damages incurred during Debtor and Peter's appeal of the Eviction Order issued in the Probate Action. Generally, when a "debtor puts up his own money as a cash deposit[,] [t]he debtor continues to have not only a legal interest, but also a residual interest in the cash deposit. Therefore, the cash deposit is property of the estate." Canzone v. Hammon (In re Hammon), 180 B.R. 220, 223 (9th Cir. BAP 1995)(prepetition cash deposit made by general contractor-debtor with state licensing board, as required by state law to insure payment of claims made against him, was property of the estate because debtor retained legal and residual equitable interest in the funds); In re S-Tran Holdings,

-23-

Inc., 414 B.R. 28, 35 (Bankr. D. Del. 2009)(holding same and citing In re Hammon). Here, however, the cash deposit was made by a third party. As such, Debtor never had any interest in the proceeds of it and neither did his bankruptcy estate. This conclusion is consistent with him not listing it as an asset in his Schedule B. (See docket no. 10). The beneficiary of the Appeal Bond was either Robert if he prevailed, or the third party who posted the funds should Debtor and Peter have prevailed.

Because the $216,000 cash deposit was never property of the estate, it was never subject to the automatic stay. Therefore, Defendants could not have violated the stay or the Stay Relief Order in trying to recover it. Accordingly, because the Complaint failed to establish a plausible claim for relief under § 362(k) or § 105(a), the bankruptcy court did not err in granting the Motion to Dismiss.

**C.    The bankruptcy court did not abuse its discretion in dismissing the Complaint without leave to amend.**

Under Civil Rule 15(a)(2), Debtor could amend his Complaint only with Defendants' consent or with the bankruptcy court's leave. Debtor contends that the bankruptcy court abused its discretion in denying leave to amend because it did so on the basis of a clearly erroneous factual finding — that the Motion to Dismiss was served on July 3 as opposed to July 16. As we have concluded above, the bankruptcy court did not err in finding that the Motion to Dismiss was served on July 3. In any event, amending the Complaint in this case would have been futile because Debtor could never state a plausible claim for relief under § 362(k) or § 105(a) on the basis of Defendants' actions to

-24-

recover on the Appeal Bond. Therefore, the bankruptcy court did not err in denying leave to amend. Thinket Ink Info. Res., Inc., 368 F.3d at 1061 (trial court does not err in denying leave to amend where amendment would be futile).

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.