**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: ERIC NJAU
MWANGI; PAULINE MUTHONI
MWICHARO,

*Debtors*,

ERIC NJAU MWANGI; PAULINE
MUTHONI MWICHARO,

*Appellants*,

v.

WELLS FARGO BANK, N.A.,

*Appellee*.

No. 12-16087

D.C. No.
2:11-cv-01753-
PMP-GWF

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, Senior District Judge, Presiding

Argued and Submitted
April 11, 2014—San Francisco, California

Filed August 26, 2014

Before: Barry G. Silverman, William A. Fletcher,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Bankruptcy

The panel affirmed the district court's affirmance of the bankruptcy court's dismissal of two chapter 7 debtors' adversary proceeding against a bank that placed a "temporary administrative pledge" on their accounts after it discovered that they had filed a bankruptcy petition.

The panel held that the debtors could not state a claim for willful violation of the automatic stay provision of 11 U.S.C. § 362(a)(3), which proscribes "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The panel concluded that before the account funds revested in the debtors, they remained estate property, and the debtors had no right to possess or control them. Accordingly, the operation of the administrative pledge could cause the debtors no injury before the account funds revested. The panel concluded that after the account funds revested in the debtors, they lost their status as estate property and thus were no longer subject to § 362(a)(3).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Christopher P. Burke (argued), Las Vegas, Nevada, for Plaintiffs-Appellants.

M. David Minnick (argued), Kevin M. Fong, and Daniel Lamb, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; Lance Earl and Lars K. Evensen, Holland & Hart LLP, Las Vegas, Nevada, for Defendant-Appellee.

**OPINION**

BYBEE, Circuit Judge:

Eric Mwangi and Pauline Mwicharo (collectively "the Debtors") were account holders at Wells Fargo Bank, N.A. When Wells Fargo discovered that the Debtors had filed a voluntary Chapter 7 bankruptcy petition, it placed a "temporary administrative pledge" on the Debtors' accounts. Wells Fargo then requested instructions from the Chapter 7 trustee regarding the distribution of account funds, a portion of which the Debtors claimed as exempt under Nevada Revised Statutes § 21.090(1)(g).

In this case, we must decide whether the Debtors can state a claim for a willful violation of 11 U.S.C. § 362(a)(3)—which proscribes "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"—based on the operation of Wells Fargo's administrative pledge. We hold that they cannot state such a claim. Before the account funds revested in the Debtors, they remained estate property, and the Debtors had

no right to possess or control them. Accordingly, the operation of the administrative pledge could cause the Debtors no injury before the account funds revested. After the account funds revested in the Debtors, they lost their status as estate property and thus were no longer subject to § 362(a)(3). We therefore affirm the district court's order affirming the bankruptcy court's judgment of dismissal with prejudice.

## I.    FACTS AND PROCEDURAL HISTORY

The Debtors filed a voluntary Chapter 7 bankruptcy petition on August 3, 2009. At that time, the Debtors held four accounts at Wells Fargo, with an aggregate balance of $17,075.06. The Debtors did not list two of the four accounts in their original Schedule B, nor did they claim an exemption for any account funds in their original Schedule C. But the Debtors did list Wells Fargo as an unsecured creditor for two debts totaling $52,000. *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi II)*, 473 B.R. 802, 804 (D. Nev. 2012).

Each night, Wells Fargo runs a computerized comparison of all newly filed Chapter 7 bankruptcy petitions against its list of account holders. When Wells Fargo discovered the Debtors' bankruptcy filing, it placed a "temporary administrative pledge" on all four of their accounts. *Id*. Wells Fargo then sent a letter dated August 6, 2009, to the Chapter 7 trustee, requesting instructions as to how Wells Fargo should dispose of the account funds. In the letter to the trustee, Wells Fargo stated that upon the filing of the bankruptcy petition, the account funds became property of the bankruptcy estate, payable only to the trustee or upon the trustee's order. Wells Fargo advised the trustee that it would maintain a hold on the account funds until it received

direction from the trustee regarding their disposition or until thirty-one days after the scheduled 11 U.S.C. § 341 meeting of creditors.

Also on August 6, 2009, Wells Fargo sent letters to the Debtors' counsel, stating that the account funds had become estate property and that, as such, the account funds were no longer available to the Debtors. The letters further stated that Wells Fargo had requested instruction from the trustee, and suggested that the Debtors might be able to expedite a decision regarding the account funds' distribution by contacting the trustee directly.

On August 11, 2009, the Debtors filed an Amended Schedule B in which they included all four of their Wells Fargo accounts. The Debtors also filed an Amended Schedule C in which they claimed an exemption in seventy-five percent of the value of each of their Wells Fargo accounts, relying on Nevada Revised Statutes § 21.090(1)(g), which provides an exemption for seventy-five percent of a debtor's disposable earnings. No party ever objected to the exemption claimed by the Debtors in the account funds.

On August 18, 2009, the Debtors' counsel contacted Wells Fargo to request that the hold be lifted because the Debtors claimed an exemption in a portion of the funds. Wells Fargo refused to lift the hold without the trustee's agreement.

On August 27, 2009, the Debtors filed a motion in the bankruptcy court seeking sanctions pursuant to 11 U.S.C. § 362(k) against Wells Fargo, based on Wells Fargo's alleged intentional violation of the automatic stay provisions in §§ 362(a)(3) and (a)(6). The bankruptcy court denied this

motion, concluding that Wells Fargo could not have violated the automatic stay because (1) the automatic stay applies only to property of the bankruptcy estate, and exempt property never becomes estate property; and (2) Wells Fargo took no action to collect, assess, or recover any prepetition claim against the Debtors.

The Debtors appealed to the Bankruptcy Appellate Panel ("BAP"), which reversed the bankruptcy court. *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi I)*, 432 B.R. 812, 816 (9th Cir. BAP 2010). First, the BAP rejected Wells Fargo's argument that the Supreme Court's decision in *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995), authorizes Wells Fargo's policy of "temporary administrative pledges." According to the BAP, *Strumpf* authorizes a bank to impose a temporary administrative hold only to preserve setoff rights, and in this case, Wells Fargo denied any intent to protect setoff rights. *In re Mwangi I*, 432 B.R. at 820. Second, the BAP found that the Debtors had an inchoate interest in the account funds, which remained part of the bankruptcy estate. *Id*. at 820–21. Third, the BAP held that 11 U.S.C. § 522's right to claim exemptions in estate property bestows standing on debtors to pursue sanctions for violations of § 362's automatic stay provisions. *Id*. at 822–23. Fourth, the BAP held that Wells Fargo had violated 11 U.S.C. § 362(a)(3) by exercising control over estate property. *Id*. at 823–24. The BAP reasoned that the turnover provisions of the Bankruptcy Code are self-effectuating and that the Debtors were not required to take any action to ripen their interest in the account funds before asserting a violation of § 362's automatic stay provisions. *Id*. at 824. Finally, the BAP remanded the case to the bankruptcy court to determine whether Wells Fargo's retention of the account funds was

reasonable and, if not, whether the Debtors had suffered damages. *Id.* at 825.

On remand, the bankruptcy court denied the motion for sanctions.[1] The Debtors then filed an adversary class action against Wells Fargo, alleging violations of § 362(a)(3)'s automatic stay provision. Wells Fargo moved to dismiss for failure to state a claim, and the bankruptcy court eventually dismissed the adversary class action with prejudice. The bankruptcy court concluded that the Debtors lacked standing to pursue any alleged violations of § 362(a)(3)'s automatic stay provision with respect to the account funds because the trustee alone has standing to protect estate property. In addition, the bankruptcy court concluded that the Debtors could not allege any injury to their inchoate interest in the account funds because they had no right to possess estate property.

The Debtors then appealed the bankruptcy court's decision to the district court. Relying principally on this court's intervening decision in *Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206 (9th Cir. 2010), the district court first set out its analytical framework. In the district court's view, if there is no objection to a debtor's claimed exemption, the property is exempt from the property of the estate and passes immediately to the debtor upon expiration of Federal Rule of Bankruptcy Procedure 4003(b)(1)'s thirty-day objections period. *In re Mwangi II*, 473 B.R. at 809. There is an exception to this general rule, however, if

> the statute permitting the debtor to claim a particular exemption does not allow the debtor

---

[1] The Debtors do not appeal that decision here.

> to exempt the entire property interest, but
> instead permits exemption of an interest in the
> property up to a particular dollar amount,
> "what is removed from the estate is an interest
> in the property equal to the value of the
> exemption claimed at filing."

*Id*. at 810 (quoting *In re Gebhart*, 621 F.3d at 1210) (internal quotation marks omitted). In such cases, the asset remains estate property, "and the estate does not relinquish the property until it is administered in the bankruptcy, the trustee abandons the property, or the bankruptcy case is closed." *Id.*

Applying this analytical framework, the district court found that the statute at issue here permits a debtor to exempt the entire property interest. *Id.* at 811. Accordingly, before the objections period ran, the account funds remained in the bankruptcy estate. *Id*. at 810. The district court found that Wells Fargo could not violate § 362(a)(3)'s automatic stay provision during this period because the Debtors had no right to possess or control the account funds. *Id*. After the objections period ran, however, the property that the Debtors claimed as exempt passed out of the bankruptcy estate. During this second period, Wells Fargo could not violate § 362(a)(3)'s automatic stay provision because that provision applies only to estate property. *Id.* Therefore, because Wells Fargo's administrative hold did not injure the Debtors under § 362(a)(3), the district court affirmed the bankruptcy court's judgment of dismissal with prejudice. *Id*. at 810–13.

## II.    STANDARD OF REVIEW

"We review de novo the district court's decision on an appeal from a bankruptcy court." *Barclay v. Mackenzie (In re*

*AFI Holding, Inc.)*, 525 F.3d 700, 702 (9th Cir. 2008). "A bankruptcy court's decision to dismiss an action for failure to state a claim is reviewed de novo, as is its interpretation of the bankruptcy code." *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011) (citations omitted). "Whether the automatic stay provisions of 11 U.S.C. § 362(a) have been violated is a question of law reviewed de novo." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002).

## III.   STATUTORY FRAMEWORK

The filing of a Chapter 7 bankruptcy petition automatically creates an estate. 11 U.S.C. § 541(a). Subject to exceptions not relevant here, the property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id*. § 541(a)(1). The trustee is the representative of this estate, *id*. § 323, and the debtor has a duty to surrender to the trustee all estate property, *id*. § 521(a)(4).

By filing a bankruptcy petition, the debtor immediately obtains the protection of an automatic stay. *Id*. § 362(a). The automatic stay "is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). "The stay [thus] protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." *Id*.

The specific stay provision at issue here is § 362(a)(3), which proscribes "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 362(k)(1) provides the enforcement mechanism for the automatic stay: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

In addition to the operation of the automatic stay, the turnover provisions of 11 U.S.C. § 542 help preserve the status quo of the bankruptcy estate at the time of its formation. The relevant turnover provision in this appeal is § 542(b), which provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

Although, as previously noted, the debtor is required to surrender all estate property to the trustee, the debtor may claim certain exemptions. 11 U.S.C. § 522. To do so, the debtor must file a list of property that he claims as exempt. *Id.* § 522(l). "[A] party in interest may [then] file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b)(1). If a party in interest does not object during the objections period, however, "the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l). This is true "even if the debtor had no good faith basis for the claim

of exemption." *In re Gebhart*, 621 F.3d at 1209–10. "The effect of an exemption is that the debtor's interest in the property is 'withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.'" *Id*. at 1210 (quoting *Owen v. Owen*, 500 U.S. 305, 308 (1991)). Indeed, "[i]t is widely accepted that property deemed exempt from a debtor's bankruptcy estate revests in the debtor." *Smith v. Kennedy (In re Smith)*, 235 F.3d 472, 478 (9th Cir. 2000).

## IV.    DISCUSSION

Although this statutory framework is undisputed, the parties contest how it applies to the case before us. The parties' disagreement revolves around (A) when exempted property revests in the debtor under Nevada Revised Statutes § 21.090(1)(g); (B) whether the alleged willful violation of § 362(a)(3) injured the Debtors' property interest; (C) whether the Debtors were required to take any action to perfect their claim of exemption before asserting a claim for damages; and (D) whether the Debtors have a claim under 11 U.S.C. § 105(a).

## A.    *The Revesting of Property under Nevada Revised Statutes § 21.090(1)(g)*

Resolution of this appeal requires us to determine when the account funds revested in the Debtors—i.e., when the Debtors developed a right to possess or control the account funds. The Supreme Court's decision in *Schwab v. Reilly*, 560 U.S. 770 (2010), guides our analysis. There, the Court considered "whether an interested party must object to a claimed exemption where . . . the [relevant statute] defines the property the debtor is authorized to exempt as an interest, the value of which may not exceed a certain dollar amount, in

a particular type of asset" rather than as the asset itself. *Id*. at 774. The Court concluded that an interested party has no duty to object so long as the asserted value of the property claimed as exempt is within the limits the statute allows. *Id*. at 782. In addition, the Court found that even when a debtor claims an exemption in an amount that is equal to the full value of the property as stated in the petition and the trustee fails to object, the asset itself remains in the estate; only an "interest" in the property equal to the value of the exemption claimed at filing is removed from the estate. *Id*. at 782–83, 792.

We applied *Schwab*'s holding in *In re Gebhart*. There, we considered two statutes that allow a debtor to exempt an interest in real property, the value of which may not exceed a certain dollar amount. *In re Gebhart*, 621 F.3d at 1210. Relying on *Schwab*, we held that "the fact that the value of the claimed exemption [was] . . . equal to the market value of the residence at the time of filing the petition did *not* remove the entire asset from the estate." *Id*. "Instead, what [was] removed from the estate [was] an interest in the property equal to the value of the exemption." *Id*. (internal quotation marks omitted). As a result, the asset would remain estate property until it was administered in bankruptcy, the trustee abandoned the asset, or the bankruptcy case closed. *Id*. at 1210, 1212; *see also Schwab*, 560 U.S. at 792 ("Where a debtor intends to exempt nothing more than an interest . . . [and] an interested party does not object to the claimed interest . . . , title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption.").

The BAP concluded that *Schwab* applies to all exemptions, not just exemptions of an interest, the value of which may not exceed a certain dollar amount. *In re Mwangi*

*I*, 432 B.R. at 821. Under this view, all exempt property remains estate property until it is administered in bankruptcy, the trustee abandons the asset, or the bankruptcy case closes. We disagree. The general rule is that exempt property immediately revests in the debtor. *See In re Gebhart*, 621 F.3d at 1210 ("The effect of an exemption is that the debtor's interest in the property is 'withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.'" (quoting *Owen*, 500 U.S. at 308)); *Bell v. Bell (In re Bell)*, 225 F.3d 203, 216 (2d Cir. 2000) ("Quite simply, property that has been exempted belongs to the debtor."). We read *Schwab* and *In re Gebhart* as an exception to this general rule, motivated by the fact that certain statutes exempt only a partial interest in an asset, the value of which may fluctuate during the pendency of the bankruptcy case. Accordingly, in our view, *Schwab* and *In re Gebhart* are limited to exemptions of an interest, the value of which may not exceed a certain dollar amount.

The question then becomes whether the relevant exemption in this case falls within the *Schwab* and *In re Gebhart* exception to the general rule that exempt property immediately revests in the debtor. We conclude that it does not. Under *Schwab* and *In re Gebhart*, we look to the text of the statute to determine whether the statute exempts the asset or an interest therein. *Schwab*, 560 U.S. at 782; *In re Gebhart*, 621 F.3d at 1210. Nevada Revised Statutes § 21.090(1)(g)[2]

---

[2] The statute provides in relevant part:

> The following property is exempt from execution, except as otherwise specifically provided in this section or required by federal law:
>
> . . .

purports to exempt "75 percent of the disposable earnings of a judgment debtor during [any] workweek." On its face, § 21.090(1)(g) defines the property that the debtor is authorized to exempt as the asset itself, i.e., disposable

> (g) For any workweek, 75 percent of the disposable earnings of a judgment debtor during that week, or 50 times the minimum hourly wage prescribed by section 6(a)(1) of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 206(a)(1), and in effect at the time the earnings are payable, whichever is greater. Except as otherwise provided in paragraphs (o), (s) and (t), the exemption provided in this paragraph does not apply in the case of any order of a court of competent jurisdiction for the support of any person, any order of a court of bankruptcy or of any debt due for any state or federal tax. As used in this paragraph:
>
> (1) "Disposable earnings" means that part of the earnings of a judgment debtor remaining after the deduction from those earnings of any amounts required by law to be withheld.
>
> (2) "Earnings" means compensation paid or payable for personal services performed by a judgment debtor in the regular course of business, including, without limitation, compensation designated as income, wages, tips, a salary, a commission or a bonus. The term includes compensation received by a judgment debtor that is in the possession of the judgment debtor, compensation held in accounts maintained in a bank or any other financial institution or, in the case of a receivable, compensation that is due the judgment debtor.

Nev. Rev. Stat. § 21.090(1).

earnings.[3] Therefore, § 21.090(1)(g) does not fall within the *Schwab* and *In re Gebhart* exception, and the general rule that exempt property immediately revests in the debtor controls exemptions claimed under this Nevada statute.

Applying the general rule, we can now determine when the account funds revested here. The Debtors filed their Chapter 7 bankruptcy petition on August 3, 2009. The account funds automatically became part of the bankruptcy estate with the filing of the Debtors' petition. 11 U.S.C. § 541(a). On August 11, 2009, the Debtors filed an Amended Schedule C in which they claimed an exemption in seventy-five percent of the value of each of their Wells Fargo accounts. But the account funds did not become exempt on that date. Under Federal Rule of Bankruptcy Procedure 4003(b)(1), "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Because the property is only "claimed as exempt" during this 30-day objection period, it may be inferred that the property is not deemed exempt, and therefore the property does not revest in the debtor, until the end of the objection period. The § 341 meeting of creditors was held on September 18, 2009, after the filing of the Amended Schedule C. Accordingly, any interested party had thirty days after the § 341 meeting of creditors to object to the Debtors' claimed exemption. During

---

[3] Although the statute refers to a percentage of disposable earnings, which might suggest an interest in a non-divisible asset, the earnings are simply an amount of money. Thus, the percentage of disposable earnings is best characterized as a portion of a divisible asset rather than an interest in an asset.

this period—from the filing of the Chapter 7 bankruptcy petition on August 3, 2009, to the end of the thirty-day objections period on October 18, 2009—the account funds remained estate property. Because all interested parties failed to act during the objections period, however, the account funds passed out of the bankruptcy estate and revested in the Debtors on October 19, 2009.[4] On that date, the Debtors developed a right to possess and control the account funds.

B. *Injury*

The Debtors argue that Wells Fargo's administrative pledge injured their interests before and after the account

---

[4] As the district court noted, the Bankruptcy Code does not unambiguously establish when property claimed as exempt revests in the debtor. *In re Mwangi II*, 473 B.R. at 809. There are several possibilities, including the date of filing of a claim for exemption, the end of the thirty-day objections period, the trustee's abandonment of the property under § 554, a court order that the property claimed as exempt belongs to the debtor, and the closing of the bankruptcy case. As we have discussed, the general rule is that property immediately revests in the debtor when the property is deemed exempt. *See In re Gebhart*, 621 F.3d at 1210; *In re Smith*, 235 F.3d at 478; *In re Bell*, 225 F.3d at 216. In contrast, under the *Schwab* and *In re Gebhart* exception, only an interest in the property is removed from the estate when the interest is deemed exempt. *In re Gebhart*, 621 F.3d at 1210. The property itself remains part of the estate until it is administered in bankruptcy, the trustee abandons it, or the bankruptcy case closes. This interpretation of the Bankruptcy Code enhances predictability for interested parties. In addition, this interpretation prevents potential unwarranted liability on the part of third party possessors of estate property, who might otherwise have to choose either (1) to comply with § 542's turnover provisions, risking potential liability to the debtor for violation of § 362's automatic stay; or (2) to comply with the debtor's demands to control the property, risking liability to the trustee for violation of § 542's turnover provisions. *In re Mwangi II*, 473 B.R. at 810.

funds revested. The Debtors contend that before the thirty-day objections period ran, they had an inchoate interest in the account funds. They claim that the administrative pledge caused them injury during this period because even their inchoate interest was superior to any interest Wells Fargo might have had. The Debtors recognize that the account funds revested after the thirty-day objections period. But despite the revesting of the account funds, the Debtors maintain that their exempt property retained its status as estate property, subject to the protection of § 362(a)(3)'s automatic stay provision. The Debtors thus claim that Wells Fargo's administrative pledge also caused them injury during this second period because they developed a right to possess and control the exempt property when it revested in them.

We reject the Debtors' argument. From the filing of the Chapter 7 bankruptcy petition on August 3, 2009, to the end of the thirty-day objections period on October 18, 2009, the account funds remained estate property. During this period, the Debtors had no right to possess or control the account funds. *See* 11 U.S.C. §§ 323, 704. The Debtors thus failed to allege a plausible injury based on the operation of the administrative pledge between August 3, 2009, and October 18, 2009. *Accord Zavala v. Wells Fargo Bank, N.A. (In re Zavala)*, 444 B.R. 181, 189–90 (Bankr. E.D. Cal. 2011); *Bucchino v. Wells Fargo Bank, N.A.(In re Bucchino)*, 439 B.R. 761, 771–73 (Bankr. D.N.M. 2010).

Nor can the Debtors allege a plausible injury based on the operation of the administrative pledge after October 18, 2009. As we have explained, the account funds passed out of the bankruptcy estate and revested in the Debtors on October 19, 2009. On that date, the account funds lost their status as estate property. And because the account funds were no longer

estate property, they were no longer subject to the protections of § 362(a)(3)'s automatic stay provision. *See* 11 U.S.C. § 362(a)(3). Accordingly, Wells Fargo's administrative pledge could not cause injury to the Debtors under § 362(k) after the account funds revested on October 19, 2009. We therefore conclude that the district court properly affirmed the bankruptcy court's dismissal of the Debtor's § 362 claim.[5]

## C. *Required Action*

The bankruptcy court suggested that the Debtors were required to take action to perfect their claim of exemption before they could assert a claim for damages. Specifically, the bankruptcy court found that the Debtors could have sought the trustee's agreement that the exempt property no longer belonged to the estate, could have requested an order from the bankruptcy court confirming that the exempt property had revested, or could have moved to compel the trustee to abandon the exempt property to them.

The Debtors contend that the bankruptcy court's suggestion erroneously placed the burden on them to secure the return of exempt property. As support, the Debtors point to our decision in *California Employment Development Department v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147 (9th Cir. 1996). There, we held that a creditor violated § 362(a)(3) by refusing to turn over estate property to the

---

[5] We note that this conclusion does not deprive the Debtors of their exempt property. As long as the account funds remained estate property, the Debtors could file a motion to compel the trustee to abandon them. And as soon as the account funds revested, the Debtors could sue Wells Fargo for breach of contract based on Wells Fargo's failure to perform its promise to pay. Our conclusion is simply that the Debtors chose the wrong tool for the job.

trustee. In so holding, we reasoned that "[t]o effectuate the purpose of the automatic stay [i.e., to alleviate financial strains on the debtor], the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor." *Id*. at 1151. Accordingly, the Debtors argue that Wells Fargo had an obligation to return their account funds, regardless of any inaction on their part.

In our view, *In re Del Mission Ltd.* is distinguishable on two bases. First, the relevant turnover provision there was § 542(a), whereas the relevant turnover provision here is § 542(b). Section 542(a) provides that an entity in possession of estate property "that the trustee may use, sell, or lease . . . shall deliver to the trustee . . . such property." 11 U.S.C. § 542(a). This turnover provision unambiguously requires the entity to deliver estate property to the trustee. In contrast, § 542(b) provides that "an entity that owes a debt that is property of the estate . . . shall pay such debt to, or on the order of, the trustee." *Id*. § 542(b). Unlike § 542(a), § 542(b) does not unambiguously require the entity to turnover estate property to the trustee. Instead, it allows the entity to seek direction from the trustee, which is precisely what Wells Fargo did here.

Second, *In re Del Mission Ltd.* involved the failure of a creditor to deliver assets *to the trustee*. Here, in contrast, Wells Fargo did not withhold estate property from the estate. On the contrary, Wells Fargo confirmed that the account funds were estate property and asked the trustee for his instructions regarding their disbursement. In other words, Wells Fargo offered to pay its debt "to, or on the order of, the trustee," in compliance with § 542(b).

Despite the valid policy concerns described in *In re Del Mission Ltd.*, the scenario presented in this case is very different. Under the Bankruptcy Code, the trustee has responsibility for estate property. *See* 11 U.S.C. §§ 323, 704. The debtor has no right to possess or control estate property while it remains property of the estate. A debtor claiming an exemption in estate property may contact the trustee to obtain a distribution of exempt property. If the trustee fails to properly distribute it, the debtor's remedy under the Bankruptcy Code is to obtain an order for abandonment pursuant to § 554(b). But where, as here, the defendant is "an entity that owes a debt that is property of the estate," the debtor has no right to possess or control the funds, and the entity has complied with § 542(b) by seeking instructions from the trustee, the debtor cannot plausibly assert that he was damaged by the defendant's purported violation of § 362(a)(3). While we agree with the Debtors that the onus to return property that, by way of a perfected exemption, has revested in the debtor is properly placed upon the possessor, the bankruptcy court did not improperly place the burden on the Debtors to take action to perfect their claim of exemption before asserting a claim for damages.

D.  *Section 105(a)*

Finally, the Debtors argue that the district court erred in affirming the bankruptcy court's dismissal of their 11 U.S.C. § 105(a) claim. Section 105(a) authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." For the reasons articulated above, we conclude that the Debtors cannot state a claim under § 362(a)(3) and that Wells Fargo complied with § 542(b). The Debtors have identified no other relevant provisions of the Bankruptcy Code. We

therefore conclude that the Debtors cannot state a claim under § 105(a). *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1070 (9th Cir. 2004) ("[A] bankruptcy court must locate its equitable authority in the Bankruptcy Code.").

## V.   CONCLUSION

We hold that property immediately revests in the debtor when the property is deemed exempt under Nevada Revised Statutes § 21.090(1)(g). The Debtors cannot allege a plausible injury under § 362(a)(3) based on the operation of Wells Fargo's administrative pledge before the account funds revested because the Debtors had no right to possess or control the account funds during this period. Similarly, the Debtors failed to allege a plausible injury under § 362(a)(3) based on the operation of Wells Fargo's administrative pledge after the account funds revested because § 362(a)(3) applies only to estate property. We therefore conclude that the district court properly affirmed the bankruptcy court's judgment of dismissal.

**AFFIRMED.**