
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MARIA DOLORES CUEVAS LEMUS,<br>　　　　　　　Debtor. | BAP No. EC-23-1035-FBC<br><br>Bk. No. 21-90584 |
| MARIA DOLORES CUEVAS LEMUS,<br>　　　　　　　Appellant,<br>v.<br>ARTURO MARTINEZ,<br>　　　　　　　Appellee. | **MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Ronald H. Sargis, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Maria Dolores Cuevas Lemus filed a chapter 7[1] petition a few hours

after Evaristo Avila Avila purported to convey an interest in certain

property to her and within minutes of Arturo Martinez's foreclosure on

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

that property. Much later, Mr. Martinez found out about the property transfer and bankruptcy filing. He then moved the bankruptcy court to retroactively annul the automatic stay in order to validate the foreclosure sale. The bankruptcy court found that Ms. Lemus had engaged in "egregious conduct" and granted the motion.

Ms. Lemus appeals, arguing for the first time that she has "new evidence" that Mr. Martinez obtained stay relief fraudulently. We discern no error and AFFIRM.

## FACTS[2]

### A.     Prepetition events

### 1.     Mr. Avila's bankruptcy case

Mr. Avila filed a chapter 13 petition on April 16, 2021. In his schedules, Mr. Avila stated under penalty of perjury that he was the sole owner of certain real property located in Crows Landing, California (the "Property"). He also stated that the Property was encumbered by a mortgage lien in favor of Mr. Martinez.

The bankruptcy court granted Mr. Martinez relief from the automatic stay. Mr. Martinez scheduled a foreclosure sale for December 17, 2021 at 1:00 p.m.

---

[2] Ms. Lemus did not file excerpts of record. We rely on the appellee's excerpts and exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and related cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

### 2. The property transfer

Mr. Avila allegedly executed a correction deed transferring an interest in the Property to Ms. Lemus for no consideration. The deed is dated December 17, 2021, which was the same date as the scheduled foreclosure sale and during the pendency of Mr. Avila's bankruptcy case. The correction deed transferred the Property to Mr. Avila and Ms. Lemus as their sole and separate property and as tenants in common, not as community property.

## B. Ms. Lemus' chapter 7 petition

Also on December 17, Ms. Lemus filed her bankruptcy petition. She says she filed the petition at 1:00 p.m.; the case was not entered on the docket until 1:19 p.m.

In her petition, schedules, and statement of financial affairs, Ms. Lemus repeatedly stated, under penalty of perjury, that she was "not married," did not own any community property, and had not lived with a spouse in a community property state in the past eight years. She identified Mr. Avila as her "business partner."

## C. The foreclosure sale

At 1:02 p.m., two minutes after Ms. Lemus says she filed her bankruptcy petition (but before it was entered on the docket), the foreclosure trustee completed the foreclosure sale.

At 2:34 p.m., Mr. Avila recorded the correction deed with the Stanislaus County Recorder.

Ms. Lemus did not give Mr. Martinez or the foreclosure trustee formal or informal notice of the bankruptcy filing for several months. Mr. Martinez's foreclosure trustee first learned of Ms. Lemus' bankruptcy case on December 29, when the foreclosure trustee received a notice from the bankruptcy court.

On January 4, 2022, the bankruptcy court dismissed Ms. Lemus' bankruptcy case because she failed to file required documents. It separately dismissed Mr. Avila's case on January 7, 2022.

On February 14, the foreclosure trustee recorded a deed conveying the Property to Mr. Martinez.

## D. The adversary proceeding

Eight months later, on October 6, 2022, Ms. Lemus filed an adversary proceeding against Mr. Martinez for wrongful foreclosure.

Contrary to her sworn statements in her bankruptcy petition and schedules, Ms. Lemus alleged that she was married to Mr. Avila when he acquired the Property in 2014 and that she "at all times herein had an interest in the [Property]."

The complaint alleged that, "[a]t the time LEMUS filed her chapter 7 case on December 17, 2021, she had either a community property or tenant in common interest in the Property" and her "interest in the Property became property of the bankruptcy estate on December 17, 2021 no later than 1:00 p.m." It asserted that the foreclosure sale was wrongful because her interest was protected by the automatic stay, and Mr. Martinez failed to

4

obtain stay relief.

Ms. Lemus sought declaratory relief and a determination that the foreclosure sale was unlawful, ineffective, and a legal nullity.

**E.     The motion to annul the automatic stay**

In December 2022, Mr. Martinez filed a motion to annul the automatic stay (the "Motion"). He argued that neither he nor his foreclosure trustee had knowledge of the alleged stay violation until Ms. Lemus filed the adversary proceeding. He acknowledged that his foreclosure trustee received notice of Ms. Lemus' bankruptcy filing from the bankruptcy court twelve days after the foreclosure sale but argued that they had no notice of a violation because Ms. Lemus was not indebted to Mr. Martinez under the loan documents and did not tell them that she claimed an interest in the Property until well after the sale took place.

Mr. Martinez also argued that Ms. Lemus engaged in bad faith. He recounted the three bankruptcy cases filed by Ms. Lemus and Mr. Avila, all of which were dismissed for failure to file documents, as well as state-court actions evidencing their bad faith. He argued that not modifying or annulling the stay would prejudice him. He stated that he had acted reasonably and did not delay in filing the Motion once he learned of the potential stay violation. Conversely, Ms. Lemus acted unreasonably and did not provide timely notice of the stay violation.

In opposition to the Motion, Ms. Lemus argued that she had a community property interest in the Property as of November 2014 and that

the Property remained community property on the petition date. She claimed that Mr. Martinez had notice of the bankruptcy case in December 2021, yet he proceeded to record the foreclosure trustee's deed the following February without seeking relief from the automatic stay.

After Mr. Martinez filed a reply brief, the bankruptcy court held a hearing and granted the Motion.

The bankruptcy court entered its findings of fact and conclusions of law as civil minutes. It considered the factors for annulment of the automatic stay under *National Environmental Waste Corp. v. City of Riverside (In re National Environmental Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir. 1997), and *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24-25 (9th Cir. BAP 2003). The court found that Mr. Martinez did not have notice of the bankruptcy filing at the time of the foreclosure sale. It determined that Ms. Lemus had engaged in unreasonable or inequitable conduct: Mr. Avila conveyed an interest to her while he was in bankruptcy and lacked authority to transfer the Property; Ms. Lemus took no steps to prosecute her case, "indicat[ing] a lack of good faith in filing, and strongly indicat[ing] that Debtor did not use the bankruptcy process the way it was intended[;]" and the only reasons for the transfer and Ms. Lemus' bankruptcy filing was "to prevent the foreclosure sale from occurring. The bankruptcy filing appears to be a scheme to hinder or delay Movant's rights to the Property."

The bankruptcy court also noted that Ms. Lemus' statements in her

petition regarding her marital status and interest in property contradicted Mr. Avila's statements in his bankruptcy case as well as her own position in her opposition to the Motion.

Finally, the court held that Mr. Martinez acted promptly after he received notice of the stay violation, while Ms. Lemus took about ten months to seek any relief. It held that not annulling the stay would prejudice Mr. Martinez.

The bankruptcy court entered a separate order annulling the automatic stay effective as of the petition date. Ms. Lemus timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in annulling the automatic stay.

## STANDARD OF REVIEW

"A decision to retroactively lift the automatic stay is reviewed for an abuse of discretion." *In re Nat'l Env't Waste Corp.*, 129 F.3d at 1054. To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585

7

F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.  The bankruptcy court may grant retroactive stay relief for cause.

The filing of a chapter 7 petition automatically creates an estate that contains all legal and equitable interests of the debtor in property as of the commencement of the case. *See Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d 1168, 1173 (9th Cir. 2014). The filing of a petition also gives rise to the automatic stay that "effect[s] an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Id.* (quoting *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)).

Section 362(d)(1) allows the bankruptcy court to terminate, annul, or modify the automatic stay "for cause." In the annulment context, the Ninth Circuit has stated that "[m]any courts have focused on two factors in determining whether cause exists to grant relief from the stay: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Nat'l Env't Waste Corp.*, 129 F.3d at 1055. It clarified that "we have never held these two factors to be dispositive; instead, we have engaged in a case by case analysis. Thus, this court, similar to others, balances the equities in order to determine whether retroactive annulment is justified." *Id.* (citation omitted).

This Panel subsequently "suggested" a handful of factors to consider when deciding a request to annul the automatic stay:

1. Number of filings;

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

4. The Debtor's overall good faith (totality of circumstances test);

5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

7. The relative ease of restoring parties to the status quo ante;

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

*In re Fjeldsted*, 293 B.R. at 25 (citations omitted). The bankruptcy court need not consider all of these factors, so long as it undertakes an analysis to balance the equities. *See Merriman v. Fattorini (In re Merriman)*, 616 B.R. 381, 391 (9th Cir. BAP 2020) ("[T]he bankruptcy court was not required to analyze each and every factor articulated in *Fjeldsted*, but it was required to balance the equities by considering whether the [appellees] were aware of the bankruptcy petition and whether prejudice would result to them by not granting retroactive relief.").

The bankruptcy court properly articulated the *National Environmental Waste Corp.* factors and examined four of the *Fjeldsted* factors. It did not err.[3]

**B.     The bankruptcy court did not err in finding "cause" to annul the automatic stay.**

Ms. Lemus concedes that, based on the facts and argument before the bankruptcy court, "[t]he bankruptcy court properly weighed the competing equities and facts and the record, before deciding and granting the Motion to Annul by Appellee." This is a sufficient basis to affirm.

However, Ms. Lemus attempts to present new evidence to show that Mr. Martinez misled the court. We are not persuaded.

---

[3] Although the issue is not raised by either party, we note that we have previously held that the U.S. Supreme Court's limitation on nunc pro tunc orders in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. ----, 140 S. Ct. 696 (2020) (per curium), does not deprive the bankruptcy court of jurisdiction to grant retroactive relief from the automatic stay. *In re Merriman*, 616 B.R. at 392-94.

### 1. Ms. Lemus' new evidence is impermissible and unavailing.

We generally will not consider new evidence and arguments presented for the first time on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (we do not consider arguments and allegations raised for the first time on appeal); *Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 512 n.5 (9th Cir. 2001) ("Evidence that was not before the lower court will not generally be considered on appeal."); *Jaurigui v. Mover (In re Swing House Rehearsal & Recording, Inc.)*, BAP No. CC-22-1218-GFS, 2023 WL 3758963, at *5 (9th Cir. June 1, 2023) (holding that the debtor waived his argument for fraud upon the court when he failed to raise it before the bankruptcy court), *appeal docketed*, Case No. 23-600028 (9th Cir. June 28, 2023).

> We have discretion to review newly presented issues on appeal if:
>
> (1) there are exceptional circumstances why the issue was not raised in the trial court; (2) new issues have become relevant while the appeal was pending because of [a] change in the law; (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court; or (4) plain error has occurred and injustice might otherwise result.

*Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) (quoting *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267-68 (9th Cir. 2001)).

The second and third exceptions apply only to legal questions, not the factual points that Ms. Lemus wants us to consider.

11

The first and fourth exceptions also do not apply. Ms. Lemus offers three pieces of "new evidence" on appeal: a partial copy of an online sale listing for the Property with an asking price of $945,000; a Mexican marriage certificate in Spanish that appears to indicate that Mr. Avila and Ms. Lemus were married on November 24, 1982; and a lengthy narrative describing her son's communications with Mr. Martinez's attorney during Mr. Avila's bankruptcy case, in which she claims that her son put Mr. Martinez on notice that Mr. Avila transferred or intended to transfer an interest in the Property to Ms. Lemus. We will not consider this "evidence" on appeal for four reasons.

First, Ms. Lemus could have offered this "evidence" to the bankruptcy court when it decided the Motion. She did not do so, and she makes no attempt to explain away her failure. Specifically, she does not assert that she did not know about the alleged fraud when the bankruptcy court decided the Motion. *See United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017) ("[R]elief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgment.").[4]

Second, even if Ms. Lemus had offered this "evidence" to the bankruptcy court, that court could and should have rejected it because none of it is presented in admissible form. The listing and the marriage

---

[4] Ms. Lemus states that she is not proficient in English, but she was represented by counsel before the bankruptcy court and at argument before this Panel.

certificate are unauthenticated, and the narrative about her son's communications appears only in an appellate brief that is unsworn and signed by her, not her son.

Third, two of the three pieces of "evidence" have little if any probative value. The sale listing of the Property does not prove its value, because parties routinely list property for sale at a higher price than they expect to receive. Her son's unspecified statements at an unspecified time about a transfer to Ms. Lemus that may or may not have occurred does not prove that Mr. Martinez knew that the Property was protected by the automatic stay at the time of the foreclosure sale.

Finally, the "new evidence" concerning the marriage of Mr. Avila and Ms. Lemus squarely contradicts Ms. Lemus' sworn statements in her bankruptcy filings that she was not married.

In short, there is no exceptional circumstance, plain error, or injustice that would compel us to consider the evidence for the first time on appeal.

**2.    Mr. Martinez did not commit fraud on the court.**

Ms. Lemus contends that Mr. Martinez "lied to the court to obtain judgment . . . ." She argues that he told the bankruptcy court at the hearing on the Motion that the Property was only worth $610,000 and that he was losing money due to a poor real estate market, while the Property was actually worth much more, as evidenced by its sale listing. She claims that these misstatements led the bankruptcy court to conclude that he would suffer irreparable harm.

13

The record shows that the bankruptcy court did not rely upon the value of the Property when it evaluated irreparable injury and retroactively annulled the automatic stay. Rather, the court noted that Mr. Martinez "already spent significant time and resources during [Mr. Avila's] bankruptcy case to properly obtain relief from the automatic stay with respect to the Property. Not annulling the stay would prejudice [Mr. Martinez]."[5] Moreover, even if the bankruptcy court relied on Mr. Martinez's statements, we would discern no error; the asking price of a property does not establish its actual value.

Finally, we note that Ms. Lemus does not challenge the bankruptcy court's finding that she and Mr. Avila engaged in "egregious conduct," including lying to the court and scheming to hinder, delay, or defraud Mr. Martinez. She does not address the bankruptcy court's findings that Mr. Avila was not authorized to transfer estate property during the pendency of his chapter 13 case; that Ms. Lemus and Mr. Avila repeatedly made conflicting statements about whether they were married and whether Ms. Lemus had any ownership interest in the Property; that they twice filed bankruptcy petitions on the day of foreclosure sales and transferred the Property on the day of the later sale to stymie Mr. Martinez; that Mr. Martinez did not know that Ms. Lemus had an interest in the Property

---

[5] In Mr. Avila's case, the bankruptcy court granted relief from the automatic stay after finding that there was not an adequate equity cushion based on the $610,000 valuation. But there is no indication that the court relied on that valuation in Ms. Lemus' case.

or had filed a bankruptcy petition at the time of the foreclosure sale; and that Ms. Lemus and Mr. Avila did not act promptly to prosecute the alleged stay violation. These unchallenged findings support the bankruptcy court's determination that retroactive stay relief was warranted.

## CONCLUSION

The bankruptcy court did not abuse its discretion in granting Mr. Martinez retroactive relief from the automatic stay. We AFFIRM.